[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 582.]

THE STATE OF OHIO, APPELLEE, *v.* CLIMACO, CLIMACO, SEMINATORE, LEFKOWITZ & GAROFOLI COMPANY, L.P.A., APPELLANT.

[Cite as *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 1999-Ohio-408.]

*General Assembly—Legislative lobbying—Criminal law—Failure to comply with registration statement filing requirements of R.C. 101.72 and 101.73— Improper reporting of honoraria by lobbyists—Prosecution for falsification barred by statute of limitations in R.C. 2901.13, when.*

(No. 98-616—Submitted February 23, 1999—Decided June 2, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 97APA03-429.

———————————

{¶ 1} In early February 1994, as a result of press scrutiny, the Attorney General's Office began investigating five lobby groups for failing to comply with the requirements of R.C. 101.72 and 101.73. These statutes require legislative agents and employers of legislative agents to register with the Joint Legislative Ethics Committee ("JLEC") (formerly with the Joint Committee on Agency Rule Review ["JCARR"]), and to file an updated registration statement and expenditure report three times a year. "Legislative agent," the statutory term for lobbyist, is defined in R.C. 101.70. At the time, honoraria were legitimate expenditures and were required to be listed as such.[1]

---

1. At the time, legislators were required to report honoraria of more than $500. Former R.C. 102.02(A)(2), 145 Ohio Laws, Part II, 3341, 3351-3352. It was reported that at some events checks were limited to $500 each, but some legislators received more than one check for each event. Accepting multiple checks from the same source was referred to as "pancaking" and was viewed as an effort to avoid financial disclosure laws. Honoraria are now prohibited. Legislative Code of Ethics, Section 10, Senate Concurrent Resolution No. 35, 120th General Assembly, Ohio Legislative Service (1994) 5-1471, 1474; Amended House Concurrent Resolution No. 5, 122nd General Assembly, 1 Ohio Legislative Service (1998) xcvii.

**{¶ 2}** A February 9, 1994 article in The Columbus Dispatch discussed the Attorney General probe. The article mentioned the possibility of broadening the investigation following disclosures made by Senator Eugene Watts that he had received honoraria at a May dinner hosted by legislative agent Paul Tipps. The law firm of Climaco, Climaco, Seminatore, Lefkowitz and Garofoli ("Climaco") was implicated for improperly reporting honoraria. The Plain Dealer also reported on the probe. The Plain Dealer article immediately prompted an associate of Climaco to call Thomas Sherman, then Executive Director of JCARR, with questions about the propriety of its filings.

**{¶ 3}** A few days after the newspaper article and telephone call, Kenneth Seminatore, a principal partner at Climaco, sent a letter to Sherman stating that according to past practices and his interpretation of the reporting requirements, he felt that there was no need to report the honoraria. However, he explained that if his interpretation was incorrect, he would gladly amend the statements, as he had no intention of evading the reporting requirements.

**{¶ 4}** In a letter dated February 28, 1994, Sherman apologized to Seminatore for any confusion caused by earlier discussions he had had with an associate of the Climaco law firm but stated that he believed the honoraria must be reported.

**{¶ 5}** Seminatore responded to Sherman's letter on March 11, 1994. In his letter, Seminatore wrote, "While we have an honest disagreement about your interpretation * * *, my desire is to err on the side of disclosure." Seminatore included an amended updated registration statement for the May through August 1993 reporting period. This letter was followed by another letter from Seminatore dated March 22, 1994, which included amended registration statements covering January through April for the years 1992 and 1993 and September through December for the year 1993. Seminatore was not alone in filing amended statements. In fact, after the first news stories were reported, at least ten groups

2

and individuals rushed to file revised or late expenditure reports. Sherman admitted that there was no system in place to review submitted reports for accuracy.

{¶ 6} Meanwhile, on March 15, 1994, the Attorney General issued his report regarding the investigation of the updated registration statements filed by the five groups referred to him in February 1994. Climaco was not one of the groups investigated. In his report, the Attorney General concluded that violations of the reporting laws might have been committed by some of the groups. He reported his findings to the Franklin County Prosecutor.

{¶ 7} In June 1994, the Franklin County Prosecutor appointed a special prosecutor, James Meeks, to investigate the payment, receipt, and reporting of honoraria. Meeks issued his report on December 21, 1994. Although Meeks focused in large part on the conduct of Ohio legislators, he also scrutinized Tipps's dinner parties and found no illegalities on Climaco's part. The investigation appeared over.

{¶ 8} However, on February 9, 1995, The Columbus Dispatch carried another article about the honorarium probe. The article accused Franklin County Prosecuting Attorney Michael Miller of delaying the nearly year-old probe into allegations that two other groups (not Climaco) had violated the state's lobbyist law by failing to report payments to legislators.

{¶ 9} According to a newspaper report, on February 24, 1995, JLEC sent the instant matter to the Franklin County Prosecutor. A grand jury eventually investigated the matter. On August 25, 1995, Seminatore and Climaco filed a motion to quash grand jury subpoenas, arguing in part that the statute of limitations had expired.

{¶ 10} On February 1, 1996, the Franklin County Prosecutor filed indictments against Seminatore and Climaco for two counts of falsification, violations of R.C. 2921.13, in connection with their June and October 1993 updated registration statement filings.

**{¶ 11}** Seminatore and Climaco filed several motions to dismiss, raising, *inter alia*, issues of statute of limitations, lack of jurisdiction, and selective prosecution. After a hearing, all motions were denied. In February 1997, Climaco pleaded no contest to two counts of failing to file accurate updated registration statements, in violation of R.C. 101.71(C). Climaco was convicted and ordered to pay a fine of $2,000 on each count. Climaco appealed, and the court of appeals affirmed.

**{¶ 12}** The cause is now before this court upon the allowance of a discretionary appeal.

───────────────

*Ron O'Brien,* Franklin County Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellee.

*Chester, Willcox & Saxbe* and *J. Craig Wright; Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A., John R. Climaco, Thomas M. Wilson, Michael P. Maloney* and *John F. Corrigan,* for appellant.

───────────────

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 13}** We are asked to determine whether the statute of limitations in R.C. 2901.13 barred appellant's prosecution for falsification. For the following reasons, we find that it did. Accordingly, we reverse the court of appeals.

**{¶ 14}** The February 1, 1996 indictment alleged that appellant knowingly made false statements in violation of R.C. 2921.13 when it filed its June and October 1993 "Employer of Legislative Agent Updated Registration Statements." R.C. 2921.13(A)(7) states, "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies: * * * The statement is in writing on or in connection with a report or return that is required or authorized by law." A violation of R.C. 2921.13(A)(7) is a first-degree misdemeanor.

{¶ 15} R.C. 2901.13 sets forth the statute of limitations for criminal prosecutions. It stated:

"(A) Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

" * * *

"(2) for a misdemeanor other than a minor misdemeanor, two years;

" * * *

"(E) A prosecution is commenced on the date an indictment is returned * * *.

"(F) The period of limitation shall not run during any time when the corpus delicti remains undiscovered." 134 Ohio Laws, Part II, 1866, 1896-1897.

{¶ 16} Appellant contends that the plain language of R.C. 2901.13(A)(2), now (A)(1)(b), requires a prosecution to be commenced within two years after the offenses were committed. Because the alleged acts of falsification occurred in June and October 1993, appellant asserts that the statute of limitations expired in June and October 1995.[2] However, the state contends that because the offenses were not discovered until February 1994, the tolling provision of subsection (F) applies, and, therefore, the state had until February 1996 to bring an indictment. The state relies on the phrase in subsection (A) "[e]xcept as otherwise provided in this section" in order to reach the tolling provision of subsection (F). The state also relies upon our

---

2. Appellant also contends that the tolling provisions of subsection (F) are inapplicable because subsection (B) applies. Subsection (B) provided: "If the period of limitation provided in division (A) of this section has expired, prosecution shall be commenced for an offense of which an element is fraud or breach of fiduciary duty, within one year after discovery of the offense either by an aggrieved person, or by his legal representative who is not himself a party to the offense." The plain language of subsection (B) makes it clear that this subsection applies only in situations where the appropriate statute of limitations in subsection (A) has expired and when a person aggrieved by fraud or breach of a fiduciary duty is involved. Here, the offenses were discovered within the statutory time period and no such aggrieved person is involved.

reaffirmation of the definition of "corpus delicti" in *State v. Hensley* (1991), 59 Ohio St.3d 136, 138, 571 N.E.2d 711, 713, *i.e.,* corpus delicti is the body or substance of the crime and is made up of two elements: (1) the act itself and (2) the criminal agency of the act. Using this definition, the state asserts that although the offenses were committed in June and October 1993, the criminal agency of the acts did not come to surface until the February 1994 sequences of events. In light of the salutary purposes of a criminal statute of limitations, as well as other policies and principles, we decline to adopt the state's position.

**{¶ 17}** The primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions. *Toussie v. United States* (1970), 397 U.S. 112, 114-115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156, 161. This "limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.* Additionally, such a time limit has the salutary effect of encouraging law enforcement officials to promptly investigate suspected criminal activity. *Id.* We recognized these purposes in *Hensley,* 59 Ohio St.3d at 138, 571 N.E.2d at 714, where we found that the intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to give offenders the chance to avoid criminal responsibility for their conduct. We stated, " 'The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence,' " quoting the Ohio Legislative Service Commission comment to R.C. 2901.13.

**{¶ 18}** We also consider the rule of statutory construction stated in R.C. 2901.04(B) ("Rules of criminal procedure and sections of the Revised Code providing for criminal procedure shall be construed so as to effect the fair, impartial, speedy, and sure administration of justice"). Additionally, it has long

been held that statutes of limitations normally begin to run when the crime is complete. *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860, 25 L.Ed.2d at 161, citing *Pendergast v. United States* (1943), 317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed. 368, 372, and *United States v. Irvine* (1878), 98 U.S. 450, 452, 25 L.Ed. 193, 194. In fact, the General Assembly has so stated in R.C. 2901.13(A)(2): "Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed." Finally, we note that the state bears the burden of proving that the offense was committed within the appropriate statute of limitations. *State v. Young* (1981), 2 Ohio App.3d 155, 2 OBR 171, 440 N.E.2d 1379.

{¶ 19} If we were to apply subsection (F) as urged by the state, thereby affording it two years from the discovery of the offense to begin prosecution, the purposes and principles governing criminal statutes of limitations would be defeated. This is glaringly evident here, considering the facts produced in the record.

{¶ 20} In February 1994, the issue of the honoraria at Tipps's dinner parties was receiving so much attention that it was reported in the newspapers. Yet it took four months for the county prosecutor to initiate an investigation into the matter and appoint a special prosecutor. The special prosecutor did not issue a report until December 1994.

{¶ 21} After reviewing the special prosecutor's report, the county prosecutor publicly stated that it encompassed the investigation of all parties— whether legislators or lobbyists—involved in the honorarium issues that had been brought to his attention. No further action was taken until the JLEC wrote to the prosecutor at the end of February 1995, requesting that the matter be pursued.

{¶ 22} Contemporaneously with the media attention in February 1994, appellant questioned whether its statements needed to be amended. After appellant was advised by Sherman that Sherman believed that appellant's interpretation was

incorrect, appellant filed an amended statement. Then appellant, on its own, reviewed other filings and amended three other statements as well. Amended reports are clearly contemplated by the reporting statutes. However, notwithstanding that, we agree with appellant that the state had everything it needed to indict for falsification, at the very latest, on March 22, 1994, when the second amended reports were sent. Thus, we reject, as incredible, the state's claim that extraordinary amounts of work accounted for the delays. In fact, the record suggests just the opposite, *i.e.,* that not much was being done to investigate this matter.

{¶ 23} Moreover, to construe subsection (F) as controlling would render subsection (A)(2) meaningless, that is, a prosecution for a misdemeanor offense would be barred if it were not commenced within two years after the offense was committed. Subsection (A) is of no consequence if subsection (F) controls all circumstances, including situations, such as here, in which discovery occurs within the statutory period. The two-year period for misdemeanors would begin only on discovery of the offense, regardless of the date of the commission of the offense. Had the General Assembly intended this, it would have required that prosecution be initiated within two years after an offense is discovered instead of within two years after an offense is committed. The language "except as otherwise provided" contained within subsection (A) clearly does not contemplate such an expansive reading of the statute.

{¶ 24} Additionally, the state's interpretation could subject a person to criminal liability indefinitely with virtually no time limit, and this would frustrate the legislative intent on criminal statutes of limitations. We will not endorse such a broad interpretation of subsection (F). See *Hensley,* 59 Ohio St.3d at 139, 571 N.E.2d at 714.

{¶ 25} Finally, the state misconstrues our *Hensley* decision. In *Hensley,* we recognized the unique nature of child sex abuse cases and the need to toll the statute

of limitations. Thus, we held for purposes of the statute of limitations for criminal prosecutions, "[t]he corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." *Id.* at syllabus. In formulating this holding, we recognized the problems of internalization for child victims and the fact that "the mental and emotional anguish that the victims suffer frequently inhibits their ability to speak freely of the episodes of abuse." *Id.* at 138-139, 571 N.E.2d at 714. See, also, *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 116-117, 637 N.E.2d 870, 872. Thus, we needed to strike a balance between the need for a time limit and the need to ensure that those who abuse children do not escape criminal responsibility. In reaching our holding, we rejected an expansive reading of R.C. 2901.13(F). In *Hensley,* we needed to apply subsection (F) because it was inevitable that many crimes with child victims would be discovered only after the statute of limitations had run. Here, we do not need to resort to subsection (F) because the alleged offenses were discovered within the statute of limitations of R.C. 2901.13(A)(2).

{¶ 26} Thus, we find that the statute of limitations set forth in R.C. 2901.13(A)(2) controlled the time within which charges were to be brought. No exception to the running of the statute of limitations applied in this case. The offenses were committed in June and October 1993. Thus, the statute of limitations expired in June and October 1995. The February 1996 indictment was untimely and should have been dismissed at the trial level.[3]

{¶ 27} The judgment of the court of appeals is reversed.

*Judgment reversed.*

DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

---

3. In light of our holding that the statute of limitations had expired, we need not reach appellant's second proposition of law questioning the prosecutor's authority to prosecute the matter.

MOYER, C.J., and COOK, J., dissent.

_____

**MOYER, C.J., dissenting.**

{¶ 28} R.C. 2901.13[4] establishes the statute of limitations for criminal offenses. Three subsections of that statute are relevant to the issues before us: subsection (A)(2), which generally establishes a two-year period of limitation for misdemeanor offenses (including the offense of falsification in violation of R.C. 2921.13)[5]; subsection (B), which allows for a one-year extension of the period of limitation where offenses containing fraud as an element are discovered by an aggrieved person following the expiration of a period of limitation; and subsection (F), which provides, "The period of limitation shall not run during any time when the corpus delicti remains undiscovered."

{¶ 29} In setting forth general periods of limitation for different categories of criminal conduct, _e.g._, minor misdemeanors, other misdemeanors, felonies, R.C. 2901.13 begins with the phrase "Except as otherwise provided in this section." Quite

_____

4. R.C. 2901.13 provides:
   "(A) Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:
   " * * *
   "(2) for a misdemeanor other than a minor misdemeanor, two years;
   " * * *
   "(B) If the period of limitation provided in division (A) of this section has expired, prosecution shall be commenced for an offense of which an element is fraud or breach of a fiduciary duty, within one year after discovery of the offense either by an aggrieved person, or by his legal representative who is not himself a party to the offense.
   " * * *
   "(F) The period of limitation shall not run during any time when the corpus delicti remains undiscovered."

5. R.C. 2921.13 provides, in part:
   "(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:
   " * * *
   "(7) The statement is in writing on or in connection with a report or return that is required or authorized by law."

clearly, then, R.C. 2901.13(A)(2), which establishes a general two-year statute of limitations for prosecution of misdemeanors, must not be read in isolation. The majority has done just that and, in so doing, disregarded the clear statutory language employed by the General Assembly in R.C. 2901.13(F). I therefore respectfully dissent.

{¶ 30} The statute of limitations set forth in R.C. 2901.13 is, by definition, a statute. It is not a doctrine of common law but is a legislative "act of grace on the part of the sovereign by which a sovereign surrenders its right to prosecute." *Akron v. Akins* (1968), 15 Ohio App.2d 168, 44 O.O.2d 299, 239 N.E.2d 430, paragraph two of the syllabus. Moreover, "[i]n the absence of statutes of limitation specially applicable to criminal cases, a prosecution may be instituted at any time, however long after commission of the criminal act." 29 Ohio Jurisprudence (1994) 235, Criminal Law, Section 3017.

{¶ 31} Consequently, this court is constitutionally mandated to interpret and apply the statute of limitations in effect in this state at the time of the criminal acts allegedly committed by the appellant. It is of no relevance that we, as individual judges, may disagree with its provisions. The General Assembly has balanced the right of the state to prosecute and the right of the defendant in not being required to defend against stale claims. It has determined that subsection (F) applies to all crimes in which the corpus delicti is discovered subsequent to the commission of the criminal conduct itself. We have no authority to override its establishment of that balance in the absence of a constitutional violation.

{¶ 32} The majority observes that courts in other jurisdictions have recognized that statutes of limitations "normally begin to run when the crime is complete." Of course, in Ohio too, pursuant to R.C. 2901.13(A), a criminal statute of limitations "normally" begins to run when the crime is complete—but not always. This is so because R.C. 2901.13 includes exceptions to the normal rule, including subsection (F), which provides: "The period of limitation shall not run during any time

when the corpus delicti remains undiscovered." This language, by its own clear and express terms, means that the clock in criminal cases simply does not begin to run for statute-of-limitations purposes until the corpus delicti is discovered.

{¶ 33} The majority recognizes that long-established precedent from this court defines the term "corpus delicti" as being composed of two elements: (1) the act itself and (2) the criminal agency of the act. See *State v. Edwards* (1976), 49 Ohio St.2d 31, 34, 3 O.O.3d 18, 20, 358 N.E.2d 1051, 1055, citing *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038. We more recently have incorporated our prior definition of "corpus delicti" in construing R.C. 2901.13(F). *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711. Accordingly, we held that the statute of limitations in criminal child-sexual-abuse cases begins to run when the two elements constituting the corpus delicti of the crime are discovered by a responsible adult as listed in R.C. 2151.421, that is, when such an adult gains knowledge of "both the act and the criminal nature of the act." *Id*. at syllabus.

{¶ 34} Unless overruled, *Hensley* provides the precedent by which this case should be decided. The majority attempts to distinguish the case at bar by virtue of the fact that criminal sexual offenses against children are reprehensible crimes, often not easily discovered or revealed. However, all crime is reprehensible, and many types of crimes are not easily discovered. All crime is subject to punishment within the guidelines established by the General Assembly.

{¶ 35} Interpretation of a statute of limitations should not be dependent upon judicial reaction to the heinousness of the crime involved, or based on the innocence of, or effect of the crime on, particular victims. No one, neither criminal defendants, prosecutors, nor the judiciary, is well served when determination of periods of limitations is uncertain. How will it be determined in the future whether the approach employed by the majority herein is applicable in individual criminal cases, or whether the *Hensley* doctrine is? Is the applicability of subsection (F) to be determined on a crime-by-crime basis?

12

**{¶ 36}** The majority reads subsections (A)(2) and (F) as being largely irreconcilable. It argues that enforcement of subsection (F) as written "could subject a person to criminal liability indefinitely with virtually no time limit, and this would frustrate the legislative intent on criminal statutes of limitations." This is not necessarily so. In most cases, the existence of a crime is discovered soon after or during its commission, and the criminal nature of the act is immediately apparent upon discovery that the act has occurred. For example, when one observes the running of a red light or discovers a break-in, it is apparent both that an act has been committed and that the act is criminal in nature. In the normal case, the corpus delicti is thus discovered contemporaneously with discovery of the criminal conduct itself. That is enough to begin the running of the statutory period.

**{¶ 37}** It is true that the rule established by subsection (F) does mean that, where the corpus delicti of a crime is not discovered for many years after the criminal conduct itself, the criminal actor could potentially be prosecuted many years after the criminal act was committed. However, this result is inherent in the language of subsection (F) itself. The General Assembly could have included, but did not include, an ultimate limit of time within which prosecutions must be brought in cases where the corpus delicti remains undiscovered for long periods of years. In the guise of refusing to broadly interpret subsection (F) the majority has, in fact, read it out of the statutory scheme.

**{¶ 38}** The majority opines that *Hensley* was based on a recognition that it was necessary to apply subsection (F) in child-abuse cases because it is inevitable that "many crimes with child victims would be discovered *only after the statute of limitations had run.*" (Emphasis added.) This characterization is logically flawed. Subsection (F) is not designed to apply after the statute has expired. Cf. R.C. 2901.13(B). It does not operate to *extend* the period of limitations; it determines when the statute *begins* to run.

{¶ 39} Similarly, the majority states that, in the case before us, "we do not need to resort to subsection (F) because the alleged offenses were discovered within the statute of limitations of R.C. 2901.13(A)(2)" (the general two-year statute). The statement assumes its own conclusion, thereby begging the fundamental questions at issue: When did the statute begin to run and when did it expire? The alleged offenses were not "discovered within the statute of limitations" if the two-year period established by (A)(2) did not begin to run until discovery was made of the fact that required reports filed by the defendants contained misrepresentations. This occurred no earlier than February 1994. Until that time, no competent adult (other than the defendants themselves or those associated with them) knew that the filing of those reports was criminal in nature. Therefore the filing of the indictment on February 1, 1996 constituted the commencement of criminal proceedings within the statute of limitations, albeit at nearly the last possible moment.

{¶ 40} The majority is critical of the state for perceived dawdling in coordinating its criminal investigation and preparing indictments. However, absent a constitutional violation, it is simply not a concern of this court whether it took one month, or four months, or twelve months for the state to initiate an investigation and appoint a special prosecutor after discovery of the reports' falsities. Nor is it appropriate for us to inquire whether that prosecutor might have issued a report sooner than he did.

{¶ 41} Our duty is limited to determining the period within which an indictment could legally be filed, and then determining whether the prosecution acted within that time. That it is conceivable that the state could have indicted earlier in the statutory period of limitation is irrelevant so long as it did, indeed, indict within the statute of limitations.

{¶ 42} In the case at bar, application of subsection (F), in conjunction with subsection (A)(2), resulted in expiration of the period of limitation two years from the date the discovery was made that the reports filed by the defendants contained

misrepresentations, and, thus, exhibited potentially criminal acts. The discovery occurred during the month of February 1994. The state filed the indictment on February 1, 1996, prior to the expiration of two years from that discovery. The prosecution was timely.

{¶ 43} Finally, an examination of R.C. 2901.13(B), which applies, as relevant herein, to prosecutions for "an offense of which an element is fraud," is necessary.

{¶ 44} As does the majority, I reject the contention that R.C. 2901.13(B) is applicable to this case. The crime of falsification set forth in R.C. 2921.13 simply does not contain fraud as one of its elements. Cf. *State v. Becker* (Mo.1997), 938 S.W.2d 267. While every instance of fraud involves a lie or misrepresentation, not every lie or misrepresentation constitutes legal fraud. Conviction of the offense proscribed by R.C. 2921.13(A)(7), *i.e.*, knowingly making a false statement in writing on or in connection with a report or return that is required by law, is not dependent upon the state's proof of other elements of fraud. That is, to obtain a conviction the state need not prove, for example, that the defendant intended that others rely on the false statement, that others in fact relied upon the statement, or that injury resulted or advantage was gained. See R.C. 2913.01(B) (" 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another"). It bears reinforcement that the critical inquiry here is not whether the misrepresentation allegedly made by the appellant actually constituted fraud—the critical inquiry is whether the state was required to *prove* fraud in order to obtain a conviction of R.C. 2921.13(A)(7). It was not.

{¶ 45} Because fraud is not an element of the offense proscribed by R.C. 2921.13, subsection (B) of the statute is inapplicable to the case at bar, and we need not interpret any inconsistencies that may exist between that subsection and other subsections of R.C. 2901.13.

{¶ 46} For the foregoing reasons, I would affirm the judgment of the court of appeals.

COOK, J., concurs in the foregoing dissenting opinion.

_____