**The STATE of Ohio, Plaintiff,**

v.

**MATTHEWS, Defendant.**

2005-Ohio-7118.]

Hamilton County Municipal Court.

No. C02CRB16220.

Decided Nov. 9, 2005.

Kirstin Fullen, for plaintiff.

Julie Deardorff, for defendant.

Mattingly, Judge.

{¶ 1} This matter came on for decision on defendant Gloria Matthews's motion to dismiss based on her claim that the state failed to commence the prosecution of

this misdemeanor charge of theft within the two-year statute of limitations as required by R.C. 2901.13.

{¶ 2} The statute governing time limitations for prosecution of a criminal offense is R.C. 2901.13, which states:

(A)(1) [A] prosecution shall be barred unless it is commenced within the following periods after an offense is committed:

(b) For a misdemeanor other than a minor misdemeanor, two years.[1]

{¶ 3} As for when a prosecution is commenced, the statute at subsection (E) states:

A prosecution is commenced on the date * * * a warrant, summons, citation, or other process is issued, whichever occurs first. * * * A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same.

{¶ 4} In computing the two-year limitation period, R.C. 2901.13(G) states:

The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid prosecution.

{¶ 5} When the statute of limitation is urged as a defense to a criminal charge, the state bears the burden of proving that the time the crime was committed comes within the appropriate statute of limitations. *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.* (1999), 85 Ohio St.3d 582, 587, 709 N.E.2d 1192, 1195–1196.

{¶ 6} On April 30, 2002, Matthews was a supervisor at the McDonald's restaurant on Kemper Road in Cincinnati, Ohio, when it was discovered that a deposit for which she was responsible was short $455.57. A few days later, on May 2, 2002, contemporaneous notes reflect that Matthews met with her supervisors to discuss the loss. She denied that she had taken the money. Nevertheless, defendant was placed on suspension from the store pending an investigation. The report of this meeting notes, "[A]t the conclusion of the investigation, we will contact you as of the outcome."

{¶ 7} Another contemporaneous record notes that on May 6, 2002, defendant's supervisors arranged to meet with her again, but defendant did not appear. The store determined that defendant had failed to follow company practices for depositing the funds in question and, as a result, it terminated defendant's employment effective May 6, 2002.

---

1. The statute provides other limitations for certain specific crimes not applicable here.

{¶ 8} Despite these records, Matthews denies that she ever heard from McDonald's after the first meeting about the missing funds on May 2, 2002. She initially testified that she did not meet with her supervisors, but later conceded that, since her signature is on her statement written that day, she must have seen it. She further testified that, after the initial meeting with McDonald's management, she never heard from her supervisors again about the status of the investigation or her job.

{¶ 9} Thereafter, McDonald's reported the theft to Police Officer Jason Boyd, who proceeded to attempt to investigate the matter. Officer Boyd testified very specifically that he attempted to contact Matthews on May 6, 2002, using the telephone number supplied by McDonald's. He spoke with defendant's mother at that number and left a message asking defendant to call. He called the same number the next day and actually spoke to defendant and told her about his investigation. She assured the officer that she had nothing to do with the theft. Officer Boyd asked her to come to the police station to be interviewed. Defendant declined to do so and said she would rather talk with an attorney.

{¶ 10} Officer Boyd again called defendant on May 9, 2002, and scheduled an interview with her on May 10, 2002 at 10:30 a.m. She did not come for the interview. The officer continued to try to reach defendant for another couple of days. He then contacted McDonald's, and the company completed appropriate paperwork to pursue criminal charges on May 21, 2002.

{¶ 11} While preparing the paperwork, the officer again spoke with defendant's mother and left messages, but defendant did not return his calls. McDonald's personnel signed charges against Matthews for theft on May 23, 2002, and a warrant for her arrest was entered in the system on May 24, 2002.

{¶ 12} To attempt to serve the warrant, Officer Boyd tried to contact defendant on May 24, 2002, by telephone, requesting that she turn herself in. Next, he checked Bureau of Motor Vehicle records, the telephone book, and the Regional Computer Information Center printout and obtained two current addresses for defendant. As a result, he went twice to Brookville Drive in Fairfield, Ohio, to attempt to serve the warrant and once to Virginia Avenue in Cincinnati for the same purpose. He was never able to find defendant. In addition, he made a number of calls to these residences between 2:00 p.m. and 10:00 p.m. Officer Boyd did not attempt to mail the warrant to either address. During his conversations with defendant, she would never agree to give him her current address. He finally terminated his attempts to serve the warrant five days after it was issued on May 29, 2002.

{¶ 13} Defendant maintains that no one ever called her about the warrant. However, she did verify that the addresses found by Officer Boyd were correct. The Fairfield address was her boyfriend's house, where she was staying; the

other address was her mother's home. She asserts that she talked with Officer Boyd two or three days after his investigation started and gave him information over the telephone. She does not recall any interview being scheduled with Officer Boyd but agreed that she did not know of any reason he would have to lie about the contacts he described.

{¶ 14} The parties herein have stipulated that the warrant was finally served on July 10, 2005, more than three years after it was issued, when defendant's records were checked during a routine traffic stop. Defendant maintained to Officer Hunter, who arrested her, that she did not know that she was wanted but told the officer that while she was responsible for the deposit of the funds in question, she did not steal the money.

{¶ 15} Given these facts, the court must determine whether the state has shown that it pursued service of the warrant with such "reasonable diligence" as to toll the two-year limitation of R.C. 2901.13. The state argued that the prosecution of Matthews commenced when the warrant for theft was filed on May 24, 2002, and Officer Boyd pursued service of the warrant with reasonable diligence as required by statute. The state further asserts that another reason for crediting Officer Boyd's rendition of the facts is that defendant immediately knew what Officer Hunter was talking about when he asked her about the complaint at the traffic stop.

{¶ 16} Matthews, however, argues that there is a difference between purpose-fully avoiding prosecution and having an affirmative duty to cooperate with a police investigation. Defendant further notes that Officer Boyd failed to take the reasonable step of mailing a copy of the warrant to defendant at her known addresses.

{¶ 17} In support of her argument, Matthews cites two cases, *State v. King* (1995), 103 Ohio App.3d 210, 658 N.E.2d 1138, and *Columbus v. Cade* (Apr. 6, 1995), 10th Dist. No. 94APC09–1337, 1995 WL 170345, both decided by the Tenth District Court of Appeals.

{¶ 18} In *King,* the court declined to find that the state had exercised reasonable diligence based on evidence that only one attempt to serve a summons was made. Thus, the bailiff who attempted personal service noted on the complaint that defendant was a nonresident and unknown and that she had disappeared without leaving a forwarding address. Most significantly, the defendant in *King* testified to reporting her change of address to the United States Postal Service, and she had made no attempt to conceal her whereabouts. She had lived in Columbus at all relevant times and had filed tax returns and a petition for bankruptcy, and she had had her correct address listed with the Bureau of Motor Vehicles. Since there was such public information readily available to determine defendant's whereabouts, the court opined that the single

effort made to serve defendant in that case did not constitute reasonable diligence. The court also found that defendant had made no attempt to conceal her whereabouts.

{¶ 19} In *Cade*, two letters about a bad check were sent to the defendant at the address listed on the check. She did not respond to either letter. Thereafter, a certified letter was sent, and the return appeared to be signed by Cade. At the hearing, however, she denied signing for the certified mail. A complaint was then issued, and when the city attempted to serve a summons at the address on the check, service failed because the apartment was vacant. Noting that the prosecution attempted to personally serve Cade at the address listed on the check, which was the same address to which hearing notices and certified mail had been sent, the court determined that the prosecution had made a reasonable effort to serve defendant. Defendant's failure to respond to these contacts established prima-facie evidence that defendant had concealed her whereabouts. The court concluded that the defendant's motion to dismiss was properly over-ruled.

{¶ 20} Turning to this case, it is noteworthy that defendant disputes both the contemporaneous records of McDonald's and Officer Boyd's detailed and credible testimony about his multiple attempts to serve the warrant at issue here. She simply responds, as did the defendant in *Cade*, that she did not have notice of the warrant.

{¶ 21} Also noteworthy is that Officer Boyd did, in fact, check a number of public sources of information to attempt to locate defendant. As in *Cade*, the addresses and telephone numbers that Officer Boyd used were current and reasonably likely to locate defendant. Indeed, in at least two instances, Officer Boyd actually spoke with defendant about the charges at issue here. Moreover, the court finds that the defendant's pre-complaint pattern of apparently ignoring the alleged theft may be a factor in determining what diligence by the state is required to toll the running of the limitation set forth in R.C. 2901.13.

{¶ 22} The court declines to find that any one method of contact must be demonstrated by the state to establish "reasonable diligence." The state's attempt to serve the warrant here, using a telephone number and addresses provided by her recent employer and addresses found in other public references, did constitute reasonable diligence to pursue prosecution of the charge.

{¶ 23} As in *Cade*, defendant's failure to respond to these contacts established prima facie evidence that defendant concealed her whereabouts. In response to this evidence, defendant's testimony was vague and not credible in view of contradictory contemporaneous records, her conflicting testimony in court, and the statements she made to Officer Hunter.

{¶ 24} In view of all these factors, this court finds that the state has demonstrated that prosecution of the theft charge at issue was commenced within the time limitations set forth in R.C. 2901.13, and therefore, defendant's motion to dismiss is overruled.

So ordered.