[Cite as *State v. Moore*, 2022-Ohio-522.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                         No. 110155

    v.                             :

JERMELL MOORE,                          :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 24, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-15-595983-A and CR-15-599401-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kerry A. Sowul, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Jermell Moore, appeals his convictions after guilty pleas to involuntary manslaughter and sexual battery. For the reasons set forth below, we reverse and remand for further proceedings.

## Factual and Procedural History

{¶ 2} On May 20, 2015, the state filed a John Doe indictment for an incident that occurred on May 28, 1995. The indictment alleged that John Doe had committed the crimes of rape and kidnapping, both felonies of the first degree.

{¶ 3} The events leading up to this indictment were as follows: In 1995, the alleged victim, L.K., filed a police report alleging she was raped by her boyfriend. L.K. submitted to a sexual assault examination and evidence was collected and stored in a rape kit. According to the police report, L.K. refused to divulge her boyfriend's identity at that time.

{¶ 4} On October 25, 2012, the rape kit was submitted to the Ohio Bureau of Criminal Investigation ("BCI") for examination. On August 13, 2013, BCI reported that an unknown male DNA profile was obtained from the vaginal swabs in L.K.'s rape kit.

{¶ 5} On August 7, 2014, BCI generated a CODIS Match Memorandum indicating that the male DNA profile from the vaginal swab in L.K.'s rape kit had been linked to DNA from a gun magazine in a homicide case. At that time, the DNA in the homicide case had not been associated with a suspect standard or a database sample from a known individual.

{¶ 6} Investigators contacted L.K. on April 22, 2015, to obtain more information about the case and the alleged perpetrator. L.K. confirmed the sexual assault, but was only able to provide the suspect's nickname, "Larue," to the investigators. At that time, investigators showed L.K. a photo array. Moore's picture

was included in the array as a suspect in the homicide investigation. L.K. did not identify anyone in the photo array as the suspect in her sexual assault.

{¶ 7} On April 5, 2016, Moore was indicted for involuntary manslaughter, a felony of the third degree, and two misdemeanor alcohol violations for incidents that occurred on March 30, 2014. One- and three-year firearm specifications were attached to the felony. Moore's codefendant, Brian Spencer ("Spencer"), was charged with the same charges as well as a charge of aggravated assault, a felony of the fourth degree. On April 19, 2016, a warrant was issued for Moore's arrest.

{¶ 8} On February 21, 2018, Moore was brought before the court on the involuntary manslaughter indictment. As a result of his arrest, a sample of his DNA was collected. On March 7, 2018, BCI generated an updated CODIS Match Memorandum indicating that the male DNA profile from the vaginal swabs in L.K.'s rape kit and the DNA from the gun magazine in the homicide case were linked to a California database sample for Moore. The record does not reflect when or how the California database sample was collected. A confirmatory test was done with Moore's DNA, which confirmed Moore as the source of the male DNA profile in the vaginal swab in L.K.'s rape kit. On May 17, 2018, the state moved to amend the John Doe indictment to reflect that the defendant was Moore.

{¶ 9} From that point, the cases proceeded together. The cases were set for trial on August 29, 2018. On that date, the state made a plea offer as follows: In exchange for a guilty plea on the rape case the state offered to amend the charges from rape to sexual battery, a felony of the third degree, and to dismiss the

kidnapping charge. In the involuntary manslaughter case, the state offered to dismiss the firearm specifications in exchange for a plea to the involuntary manslaughter charge. The state also offered to dismiss the associated misdemeanors.

{¶ 10} Moore's counsel indicated he had discussed the plea offer in detail with Moore and his wife that morning. The trial court explained the repercussions of the plea deal on the record. Moore was not ready to agree to a plea deal at that time. The court took a recess, after which, the trial court asked if the parties were ready to proceed. At that time, Moore indicated he needed more time to talk to his counsel. The court recessed again to allow that to happen. When the trial judge returned, defense counsel indicated he had recommended Moore take the plea but Moore had not decided. The trial court summarized what had occurred, reminded the parties that they were set for trial, and they could proceed with trial if they chose. After further discussion with Moore, defense counsel indicated Moore would take the plea deal. This back-and-forth deliberation between Moore and defense counsel lasted between four and five hours.

{¶ 11} The trial court conducted a comprehensive plea colloquy to which Moore indicated he understood all of his rights, was satisfied with his attorney's representation, and did not have any questions. Moore pled guilty to the charges as amended. Moore's sentencing was scheduled for September 26, 2018.

{¶ 12} On September 12, 2018, defense counsel filed a short motion to withdraw Moore's plea in both cases. The motion indicated that Moore, against the

advice of counsel, wished to withdraw his pleas because "he has a valid defense to both charges and that he is not guilty of same."

{¶ 13} On September 26, 2018, the court convened and addressed the motion to withdraw guilty plea prior to sentencing. Defense counsel spoke briefly on his motion to withdraw the plea and explained to the court why he advised Moore against it. Defense counsel stated that he based his advice on the quality of the evidence and the fairness of the offer. Specifically, defense counsel referred to the dismissal of the gun specifications and the reduction of the rape to sexual battery as significantly reducing potential jail time. Defense counsel also noted that DNA evidence identified Moore in the rape case and that the only issue was consent. Defense counsel also reminded the court that the plea took place on the date of trial and that the trial court permitted Moore to think about whether to plead for four to five hours while it conducted other business. After asking to hear from the state, which referred the court to its motion, the trial court denied the motion and proceeded with sentencing.

{¶ 14} The trial court heard from both sides prior to issuing its sentence. In the involuntary manslaughter case, the state alleged that Moore was running an after-hours club. Spencer, the codefendant, was handling security and Moore was alleged to have provided Spencer with a gun. The state alleged that a fight broke out and while Spencer was trying to break it up, he pulled the gun and fired one shot, shooting and killing Akeem Tidmore ("Tidmore"). In the sexual battery case, the state alleged that Moore and the victim, L.K., were on a date. The state alleged

Moore and L.K. had met through L.K.'s cousin and had talked on the phone previously. May 28, 1995, the date of the alleged rape, was the first time Moore and L.K. met in person. Moore and L.K. ended up parking in an out-of-the-way area. The state alleged that Moore attempted to have sex with L.K.; however, she refused. Moore then forced L.K. to have sex.

{¶ 15} Defense counsel then addressed the court alleging that Moore was tending bar when the homicide occurred and was not involved in the incident. Defense counsel stated that the shooting was accidental. He submitted that Spencer was punched by a member of Tidmore's group. Spencer then pulled out the gun. When Spencer was punched again, the gun went off, killing Tidmore. With respect to the sexual assault case, defense counsel relayed that the police report indicated the victim wanted to engage in sex but changed her mind when she realized Moore did not have protection. Defense counsel alleged that the only issue was consent.

{¶ 16} The trial court then asked Moore if he had anything to add. Moore attempted to reopen his motion to withdraw guilty plea, alleging that there was taped evidence from the rape investigation that he did not hear until after he pled. Moore denied "forcing himself" on the victim and alleged that in the tape, the victim "kind of said that I didn't force myself on her." He indicated that after reviewing that evidence along with unspecified "other factors," he asked his counsel to withdraw the plea. The trial court then inquired of defense counsel whether he reviewed the discovery with Moore. Defense counsel told the court that he had not received the audiotaped statement until after the plea. Once he did, he arranged for

Moore to review the tape with him. Defense counsel alleged that the taped statement agreed with the prosecution's recitation of facts and, therefore, he stood by his advice to his client not to withdraw his plea.

{¶ 17} The state did not directly refute defense counsel's statement that he received the audiotaped statement after the plea. Rather, the state indicated that the victim's "purported statement" was provided to the defense on June 11, 2018. The trial court did not revisit its decision to deny the motion to withdraw plea.

{¶ 18} The trial court proceeded to sentence Moore to two years on the involuntary manslaughter and two years on the sexual battery to run concurrently. The trial court also informed Moore that he would be designated a sexually oriented offender. Moore did not file a timely appeal to his convictions.

{¶ 19} On June 4, 2019, Moore, through new counsel, filed a motion requesting judicial release. Moore argued that he had accepted responsibility for his actions. He highlighted the programming he had completed while in prison, the continued support of his wife and children, and his efforts to remain involved in the lives of his children while incarcerated. The state opposed the motion arguing that Moore did not accept responsibility for his actions, and in fact asked to withdraw his plea prior to sentencing. Further the state pointed to the seriousness of the charges and argued that Moore was serving two years for two separate serious offenses and should not be granted judicial release. The trial court denied Moore's motion without a hearing on September 19, 2019.

{¶ 20} On October 25, 2019, Moore filed a pro se motion for judicial release. Moore alleged that his pleas were involuntary due to unspecified "wrong and unlawful" conduct inside and outside the courthouse. Moore argued that he was not a violent person and that the likelihood of recidivism was low. He also highlighted the programming he had received in prison, his continued connection with his family, his business, and his role as a mentor to younger prisoners.

{¶ 21} On October 28, 2019, Moore filed a postconviction petition in the involuntary manslaughter case only. Nevertheless, Moore sought to vacate his convictions in both cases. Moore argued that he received ineffective assistance of counsel at his plea and sentencing hearing. Moore denied wrong doing in the involuntary manslaughter case, arguing that Spencer was acting in self-defense and in defense of others. For the first time, Moore argued that defense counsel lied to him and told him that the alleged victim in the rape case identified him from a photo array. He also argued that the alleged victim identified someone else as the perpetrator in her audiotaped statement. However, Moore argued in the alternative that the alleged victim lied to the police and her parents about the sex being rape.

{¶ 22} Furthermore, Moore alleged that he pled guilty because defense counsel convinced him his life would be in danger if he didn't enter a plea. Moore alleged that when he told defense counsel that he refused to plead guilty, defense counsel allegedly told him: "The family's crazy and they're going to kill you." It is unclear who the "family" was, however, Moore alleged that someone shot up his house and burned it down shortly after Tidmore's death. Defense counsel alluded

to this event at the September 26, 2018, sentencing hearing. Regardless, Moore argued that defense counsel's statements made him believe that if he did not enter a plea his life would be in danger.

{¶ 23} Finally, Moore argued that he did not disclose his concerns to the judge during the plea because he feared doing so would place his life in danger. He further alleged that when he asked for more time to think about the plea deal, defense counsel told Moore that if he took the plea deal, he would be safe.

{¶ 24} The state did not reply to Moore's pro se motion for judicial release. The trial court denied Moore's motion without a hearing on March 9, 2020. The state filed a motion in response to Moore's postconviction petition. However, before the trial court could rule on it, Moore filed leave to appeal his convictions. Moore's initial leave to file a delayed appeal was denied on October 20, 2020.

{¶ 25} On December 14, 2020, Moore filed a second motion for leave to file a delayed appeal that was granted. The trial court still had not ruled on Moore's postconviction petition at that time.

{¶ 26} Moore presents the following errors for our review:

**Assignment of Error No. 1**

Appellant was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1 Section 10 of the Ohio Constitution.

**Assignment of Error No. 2**

The trial court abused its discretion by failing to hold a substantive hearing and denying Appellant's pre-sentence motion to withdraw his guilty plea.

**Law and Analysis**

{¶ 27} In his first assignment of error, Moore argues that he received ineffective assistance of counsel. Moore focuses on three ways in which his counsel was ineffective. First, he argues that his counsel did not provide adequate representation when he wished to withdraw his guilty plea. Second, he argues that he received ineffective assistance because his counsel failed to file a motion to dismiss based on the statute-of-limitations. Third, Moore argues that he received ineffective assistance because his counsel failed to file a motion to dismiss based on prejudicial preindictment delay. In his second assignment of error, Moore argues the trial court erred in failing to hold a substantive hearing on his presentence motion to withdraw guilty plea.

{¶ 28} Because we find the statute-of-limitations issue dispositive of this appeal, we will address it first.

{¶ 29} In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate "(1) deficient performance by counsel, namely that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the party, or a reasonable probability that but for counsel's errors, the outcome would have been different." *State v. Knight*, 8th Dist. Cuyahoga No. 109302, 2021-Ohio-3674, ¶ 46, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 30} When a defendant enters a plea of guilty, he "waives a claim of ineffective assistance of counsel except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary." *State v. Mohammad Khoshknabi*, 2018-Ohio-1752, 111 N.E.3d 813, ¶ 29 (8th Dist.), citing *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 30 (8th Dist.); *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11. After a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim by demonstrating (1) that counsel's performance fell below an objective standard of reasonable representation, "that caused the defendant's guilty plea to be less than knowing, intelligent and voluntary" and (2) "that there is a reasonable probability that, but for counsel's deficient performance, the defendant would not have plead guilty * * * and would have insisted on going to trial." *Id.*, citing *Williams* at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*, quoting *Strickland* at 694.

{¶ 31} Moore argues that his counsel should have challenged the statute-of-limitations and that his failure to do so amounted to ineffective assistance of counsel. Moore argues that he was a known suspect in the rape case as early as April 22, 2015, the date that the detectives reinterviewed the alleged victim. Based on that, Moore argues that the John Doe-DNA indictment should not have tolled the

statute-of-limitations. Consequently, Moore argues he received ineffective assistance of counsel when his lawyer failed to raise the statute-of-limitations.

{¶ 32} The purpose of the criminal statute-of-limitations is to "'limit exposure to prosecution to a certain fixed period of time following the occurrence of [the criminal acts] * * *.'" *State v. Hawkins*, 2019-Ohio-5133, 150 N.E.3d 519, ¶ 11 (8th Dist.), citing *State v. Climaco,* 85 Ohio St. 3d 582, 586, 709 N.E.2d 1192 (1999). The criminal statute-of-limitations is governed by R.C. 2901.13. *Id.* "R.C. 2901.13 is not designed to give offenders a chance to avoid criminal liability, but rather, 'to discourage inefficient or dilatory law enforcement.'" *Id.,* citing *Climaco* at 586. Criminal prosecution should be based on reasonably fresh and trustworthy evidence. *Id.* "When the statute-of-limitations is a defense to a criminal charge, the state bears the burden of proving that the prosecution of the crime comes within the appropriate statute-of-limitations." *Id.,* citing *Climaco* at 587.

{¶ 33} Under former R.C. 2901.13(A)(3), which was in effect at the time of the May 20, 2015 indictment, a prosecution for rape or kidnapping is barred unless it is "commenced" within 20 years. Former R.C. 2901.13(E) defines "commenced" as follows:

> A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same. A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same.

{¶ 34} The statute-of-limitations, however, may be tolled in certain situations. We have found that "if reasonable diligence was used by law enforcement in its attempts to identify the defendant, and all attempts have failed, a John Doe-DNA indictment or warrant can toll the statute-of-limitations." *State v. Gulley*, 8th Dist. Cuyahoga No. 101527, 2015-Ohio-3582, ¶ 15, citing *State v. Danley*, 138 Ohio Misc.2d 1, 2006-Ohio-3585, 853 N.E.2d 1224 (C.P.); *State v. Younge*, 2013 UT 71, 321 P.3d 1127; *Commonwealth v. Dixon*, 458 Mass. 446, 938 N.E.2d 878 (2010); *People v. Robinson*, 47 Cal.4th 1104, 104 Cal.Rptr.3d 727, 224 P.3d 55 (2010); *State v. Burdick*, 395 S.W.3d 120 (Tenn.2010); *People v. Martinez*, 52 A.D.3d 68, 855 N.Y.S.2d 522 (2008); *State v. Davis*, 2005 WI App. 98, 281 Wis. 2d 118, 698 N.W.2d 823; *State v. Dabney*, 2003 WI App. 108, 264 Wis.2d 843, 663 N.W.2d 366 (2003).

> *Black's Law Dictionary*, (5[th] Ed.1979), at 412, defines "reasonable diligence" as '[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a [person] of ordinary prudence and activity.' *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983). "[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case." *Id.*

*Young v. Harris*, N.D.Ohio No. 1:18-cv-01398, 2019 U.S. Dist. LEXIS 151410, at ¶ 30 (Aug. 12, 2019).

{¶ 35} In the instant case, the state filed a John Doe-DNA indictment on May 20, 2015, eight days prior to the expiration of the statute-of-limitations. This indictment would have tolled the statute-of-limitations beyond its expiration of May 28, 2015, under *Gully, if* the state used reasonable diligence in ascertaining

Moore's identity at the time of filing. A review of the record in this case does not support the state using such reasonable diligence.

{¶ 36} According to its May 17, 2018 motion to amend the indictment, the state averred that the alleged victim knew Moore; however, according to the police report, she refused to give the police his identity. Further evidence of the victim's knowledge of Moore was referenced at sentencing. When asked for a statement during sentencing, the state averred that the alleged victim met Moore through a cousin. Further, Moore and the alleged victim had spoken on the phone multiple times prior to the date of the alleged assault. The trial court also noted while reviewing the presentence investigation report that the alleged victim described Moore as her boyfriend. Finally, the trial court noted that, according to the police report, L.K. drove Moore home after the alleged assault.

{¶ 37} Despite all of these potential leads, which could have led to the identity of the suspect, the case remained dormant until the state submitted the rape kit to BCI for analysis in 2012. BCI determined that the rape kit contained an identifiable sample of male DNA in 2013. That sample was linked to the homicide in 2014. The record reflects that L.K. was shown Moore's picture in a photo array in April 2015. While the victim was unable or unwilling to identify Moore, other than this photo array, the record does not reflect what other steps, if any, the state took to identify Moore beyond DNA comparison.

{¶ 38} As we noted in *Gully,* 2015-Ohio-3582, a John Doe-DNA indictment tolls the statute-of-limitations when the suspect is unknown, or where the only way

to ascertain the identity of the suspect is DNA comparison.  In the *Gully* case, the court addressed a situation when the state sought a John Doe indictment even though the identity of the suspect was known to the state.  The *Gully* Court found that

> to indict a *known* defendant as "John Doe" is completely contradictory to the intent behind the statute-of-limitations * * *.  As we previously stated, the statute-of-limitations is intended "to discourage inefficient or dilatory law enforcement."  (citation omitted) Here, where law enforcement had Gulley's name but simply failed to investigate the matter further when the victim failed to appear for her interview, reasonable diligence does not support the use of a John Doe-DNA indictment.  In fact, * * * one of the factors in determining whether the use of the DNA profile tolled the statute-of-limitations, is "the reason for the delay was that the only way to locate and identify the defendant was the DNA profile, which could be matched only as the information became available from the incarcerated defendant."  [*State v. ]Danley*, [138 Ohio Misc.2d 1, 2006-Ohio-3585, 853 N.E.2d 1224 (C.P.) at] ¶ 16

*Gulley* at ¶ 16 (emphasis sic).

{¶ 39} In the record before us, the state had enough information on Moore to include him in the April 22, 2015 photo array shown to L.K.  And yet, there is nothing in the record to show the state did any further investigation to determine whether Moore was the suspect in the rape between the date of the incident, May 28, 1995, and May 28, 2015, the date the statute-of-limitations expired.  Ultimately, three years *after* the statute-of-limitations expired, Moore was identified as a named suspect, when BCI was able to match his DNA to the DNA in the rape kit.

{¶ 40} The state has the burden of showing it behaved with reasonable diligence when, as here, a defendant is not identified until after the statute of limitation has expired.  *Hawkins*, 2019-Ohio-5133 at ¶ 11.  There is nothing in the

record to suggest that the state used reasonable diligence to ascertain Moore's identity before the expiration of the statute-of-limitations. Further, after the John Doe-DNA indictment was filed, the state waited for a DNA match to identify Moore in 2018. Given the foregoing, a motion to dismiss highlighting the lack of investigation and the 23-year delay in identifying Moore should have been filed. Given the facts before us, we find there was a reasonable probability such a motion would have been granted.

> Where * * * a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."

*State v. Wise*, 5th Dist. Coshocton No. 2021CA0001, 2021-Ohio-3190, ¶ 43, citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) quoting *Mann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

{¶ 41} Since the lack of reasonable diligence on the part of the state in ascertaining Moore's identity called into question whether the John Doe-DNA indictment tolled the statute-of-limitation a motion to dismiss should have been filed. Defense counsel's failure to do so caused his advice to be outside the range of competency that is demanded in criminal cases. For this reason, we find that Moore's plea was not voluntarily made.

{¶ 42} Nevertheless, ineffective assistance of counsel only exists in this context if a counsel's error rendered the plea infirm and the defendant would not have pled guilty and would have insisted on taking his case to trial. *Khoshknabi*,

2018-Ohio-1752 at ¶ 29. In the instant case, the record is clear that Moore was reluctant to plead and would in fact have withdrawn his plea, had the trial court permitted it, and proceeded to trial. Undeniably with Moore's reluctance to plea, had defense counsel raised the issue of the statute-of-limitations with Moore prior to the plea hearing, Moore would not have pled guilty and instead insisted that his lawyer pursue that defense.

{¶ 43} Consequently, Moore received ineffective assistance of counsel when counsel failed to file a motion to dismiss based on the statute-of-limitations. Accordingly, we sustain Moore's first assignment of error. Based on that finding, Moore's second assignment of error is rendered moot.

{¶ 44} Judgment reversed and case remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR