THE STATE OF OHIO, APPELLANT, *v.* BESS, APPELLEE.

[Cite as *State v. Bess*, 126 Ohio St.3d 350, 2010-Ohio-3292.]

*While a person purposely avoids prosecution for a crime, R.C. 2901.13(G) tolls*
*the statute of limitations for all crimes he or she committed.*

(No. 2009-1196 — Submitted March 9, 2010 — Decided July 20, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 91429,

182 Ohio App.3d 364, 2009-Ohio-2254, 912 N.E.2d 1162.

_____

SYLLABUS OF THE COURT

R.C. 2901.13(G) tolls the statute of limitations for *all* offenses committed by an
accused during the time when the accused purposely avoids prosecution,
regardless of whether an indictment has been returned or whether
underlying criminal activity has been discovered.

_____

O'DONNELL, J.

{¶ 1} The state of Ohio appeals from a judgment of the Eighth District Court of Appeals affirming the trial court's dismissal of an indictment against Larry Bess as barred by the statute of limitations. The issue presented here concerns whether R.C. 2901.13(G), which provides that the statute of limitations shall not run during any time when the accused purposely avoids prosecution, tolls the limitations period for all offenses the accused committed, or whether it applies only to those offenses for which an indictment has been returned or underlying criminal activity has been discovered before the accused absconds.

{¶ 2} Nothing in this statute limits its application to only those crimes that had been discovered at the time the accused avoided prosecution. Rather, R.C. 2901.13(G) tolls the statute of limitations for *all* offenses committed by an

accused during the time when the accused purposely avoids prosecution for any offense. Accordingly, the judgment of the court of appeals is reversed, and the indictment is reinstated.

**Facts and Procedural History**

{¶ 3} In the early 1980s, Larry Bess began living with Theresa Ogden, and the couple married in 1986. Theresa had two children from a prior relationship: a son and a daughter. They lived at the Sunrise Cove Condominiums in North Royalton, where Bess began sexually abusing Theresa's daughter. The abuse continued until February 1989, when the daughter revealed it to a school counselor, who then reported the abuse to law-enforcement personnel and children's services.

{¶ 4} Bess also allegedly sexually abused Theresa's son during this same time period, but when Detective Allen Napier of the North Royalton Police Department interviewed him as part of the investigation of his sister's claims, he said that his sister had lied, and he denied having been sexually abused by Bess.

{¶ 5} When Bess became aware of the investigation, he began making plans to change his identity and leave town. He told Theresa that he planned to leave and assume a new identity because he did not believe that he could defend himself against her daughter's allegations and did not want to go to jail.

{¶ 6} Bess and Theresa sold their home in North Royalton and split the proceeds. Bess then purchased a van, loaded his belongings, and left. When asked why she had not told authorities about Bess's plans to abscond, Theresa testified, "He hadn't been indicted or — you know. Nobody asked." She did not try to stop him from leaving, because she did not believe that he had sexually abused her daughter.

{¶ 7} On November 2, 1989, after Bess left the jurisdiction, a Cuyahoga County grand jury indicted him on three counts of rape and seven counts of gross sexual imposition in connection with the abuse of Theresa's daughter. The

Cuyahoga County Court of Common Pleas issued a capias for his arrest on November 27, 1989, when he failed to appear in court. Bess successfully concealed his identity and his whereabouts until March 5, 2007, when the FBI arrested him in Bogart, Georgia, where he had been living under an alias of Norman E. Weatherby.

{¶ 8} Following Bess's apprehension, Detective David Sword of the North Royalton Police Department began looking for witnesses in the case. He met with Theresa's son, who eventually revealed that Bess had sexually abused him from 1982 to 1989.

{¶ 9} Based on his statements, the state obtained a second indictment against Bess, charging him with six counts of rape, two counts of gross sexual imposition, and one count each of attempted rape and complicity in the commission of rape.

{¶ 10} The trial court tried Bess for the offenses committed against Theresa's daughter, which were not time-barred because he had purposely avoided that prosecution, and a jury subsequently found him guilty of those charges. The court of appeals affirmed. See *State v. Bess*, Cuyahoga App. No. 91560, 2009-Ohio-2032.

{¶ 11} Bess moved to dismiss the indictment that charged crimes against Theresa's son, arguing that the six-year statute of limitations established by former R.C. 2901.13(A)(1)[1] had expired. The state objected, contending that R.C. 2901.13(G)[2] tolled the statute of limitations during the time when Bess had

---

1. In 1998, the General Assembly enacted Sub.H.B. No. 49, effective 1999, which amended R.C. 2901.13(A) to increase the statute of limitations for the offenses of rape and gross sexual imposition to 20 years. 147 Ohio Laws, Part I, 299-300.

2. The version of R.C. 2901.13(G) in effect at the time that Bess allegedly committed the crimes and at the time that the statute of limitations would have expired if not tolled provided: "The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused absented himself from this state or concealed his identity or whereabouts is prima-facie evidence of his purpose to avoid prosecution." Am.Sub.H.B. No. 511, 134 Ohio Laws,

purposely avoided prosecution. The trial court granted Bess's motion and dismissed the indictment relating to charges involving crimes against Theresa's son, finding that Bess had not purposely avoided prosecution for those alleged crimes.

{¶ 12} On appeal, the court of appeals affirmed the judgment of the trial court. Relying on *State v. McGraw* (June 16, 1994), Cuyahoga App. No. 65202, the author of the appellate court opinion[3] concluded that Bess's flight and his concealment from prosecution for the sexual abuse of Theresa's daughter tolled the statute of limitations for those crimes, but did not toll the statute of limitations for charges related to the sexual abuse of Theresa's son, which the state learned about after Bess's apprehension.

{¶ 13} The state appealed, and we agreed to address the following proposition of law: "The statute of limitations upon criminal offenses is tolled pursuant to former R.C. § 2901.13 (G) when the accused purposely avoids prosecution for an offense."

{¶ 14} The state contends that R.C. 2901.13(G) tolls the statute of limitations for "any and all prosecutions against an accused who purposely avoids prosecution," noting that this statute contains no language that expressly limits tolling to those prosecutions that the accused specifically intended to avoid. According to the state, the purpose of the statute of limitations is to discourage inefficient or dilatory law enforcement, not to permit offenders to evade responsibility for criminal conduct; thus, tolling should not apply when the offender's action causes the delay in prosecution.

---

Part II, 1866, 1896-1897. The General Assembly subsequently amended R.C. 2901.13(G) to incorporate gender-neutral language.

3. The author's opinion in the court of appeals did not receive a second vote. A second judge concurred in judgment only and a third judge on the panel dissented.

{¶ 15} Bess, on the other hand, asserts that R.C. 2901.13(G) tolls the statute of limitations only when the evidence shows that "the accused left the jurisdiction purposefully to avoid the offense charged." He maintains that both the rule of lenity, which requires criminal statutes to be strictly construed against the state and liberally construed in favor of the accused, and the purpose of a statute of limitations in general – to protect the accused from having to defend against stale charges – support his construction of the statute. Bess also notes that Theresa's son did not report abuse to anyone before Bess was apprehended, which he now suggests shows that he could not have purposely avoided prosecution for those charges.

{¶ 16} Thus, the issue is whether R.C. 2901.13(G) tolls the limitations period of all crimes allegedly committed by an accused during the time the accused purposefully avoids prosecution, or whether it applies only to the offenses the accused specifically intended to avoid at the time the accused absconded.

### Law and Analysis

{¶ 17} R.C. 2901.13(G) provides: "The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid prosecution."

{¶ 18} This case presents a question of statutory interpretation of the term "prosecution" as used in R.C. 2901.13(G). As we explained in *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, in construing statutes, " 'our paramount concern is the legislative intent in enacting the statute.' *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. Furthermore, '[i]n determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage.' Id." *Buehler* at ¶ 29. Thus, as the

court stated in *State v. Teamer* (1998), 82 Ohio St.3d 490, 491, 696 N.E.2d 1049, "[w]e must give effect to the words of a statute and may not modify an unambiguous statute by deleting words used or inserting words not used."

{¶ 19} As Bess argues, the word "prosecution" could refer to a particular prosecution, that is, "[a] criminal proceeding in which an accused person is tried." Black's Law Dictionary (8th Ed.2004) 1258. If "prosecution" is defined this way, tolling occurs only when a person avoids prosecution for specific charges.

{¶ 20} The word "prosecution," however, could also refer to the more general process by which an accused is tried and punished for criminal activity. See *Thomas v. Peoria* (C.A.7, 2009), 580 F.3d 633, 638-639 (" 'Prosecution' * * * just means law enforcement by public officers"); Merriam-Webster's New Collegiate Dictionary (11th Ed.2003) (defining "prosecution" to mean "the act or process of prosecuting"). If this more general definition of "prosecution" was intended by the General Assembly, then the statute encompasses all offenses committed by the accused and tolls the crimes' statute of limitations when an accused leaves the state or conceals his or her identity or whereabouts with the purpose of avoiding *being prosecuted* for any crime.

{¶ 21} The context in which the word "prosecution" is used in R.C. 2901.13(G) reveals that the word refers to the more general process by which an accused is tried and punished for alleged criminal activity, not a specific proceeding against an accused, and the statute of limitations is tolled when an accused acts to purposely avoid being prosecuted for any offense.

{¶ 22} While this is a question of first impression in our court, federal courts interpreting similar language in Section 1073, Title 18, U.S.Code, have defined the words "to avoid prosecution" to mean " 'to avoid being prosecuted.' " *United States v. Frank* (C.A.3, 1988)*, 864 F.2d 992, 1007, quoting *United States v. Bando* (C.A.2, 1957)*, 244 F.2d 833, 843; see also *Lupino v. United States* (C.A.8, 1959), 268 F.2d 799, 801; *United States v. McKinney* (D.Md.1992) 785 F.

Supp. 1214, 1218. These courts have explained that Section 1073, which criminalizes crossing state lines with the intent to avoid prosecution, does not require the existence of a pending prosecution, but rather "[i]t is sufficient if the fleeing felon is 'subject to prosecution.' " *Bando,* 244 F.2d at 843. Cf. *State v. Gleason* (Iowa 1988), 431 N.W.2d 363, 364 (defining unlawful flight "to avoid prosecution" in an Iowa statute to mean flight "which was to prevent even the occurrence of prosecution").

{¶ 23} Notably, R.C. 2901.13(G) contains no language suggesting that its application should be limited only to those cases when the accused sought to avoid a particular prosecution. Nor is there language suggesting a limitation to only those prosecutions that had been commenced before the accused absconded or to those cases when the state can prove that the accused intended to avoid prosecution for a specific crime. The lack of any qualifying or limiting language reveals the legislature's intent to toll the statute of limitations with respect to *all* offenses during the time when an accused purposely avoids prosecution for any offense.

{¶ 24} Moreover, the manifest purpose of R.C. 2901.13(G) is to prevent the accused from benefiting from the statute of limitations when he or she has purposely acted to avoid being prosecuted, thereby causing the state to fail to commence a timely prosecution. Importantly, it is the actions of the accused in avoiding prosecution, not the actions of the state in commencing a prosecution, that triggers the tolling of the statute of limitations. Thus, the General Assembly did not intend to limit tolling to only those offenses that authorities knew about at the time the accused absconded while allowing the statute of limitations to run on undiscovered crimes.

{¶ 25} Our construction of R.C. 2901.13(G) accords with the General Assembly's intent in enacting the statute of limitations in R.C. 2901.13(A). As we explained in *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co.,*

*L.P.A.* (1999), 85 Ohio St.3d 582, 709 N.E.2d 1192, the purpose of a statute of limitations is "to discourage inefficient or dilatory law enforcement rather than to give offenders the chance to avoid criminal responsibility for their conduct." Id. at 586, citing *State v. Hensley* (1991), 59 Ohio St.3d 136, 138, 571 N.E.2d 711. A statute of limitations " 'protect[s] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.' " Id., quoting *Toussie v. United States* (1970), 397 U.S. 112, 114-115, 90 S.Ct. 858, 25 L.Ed.2d 156.

{¶ 26} These statutory purposes are not furthered, however, when the accused purposely avoids prosecution, because it is the conduct of the accused, not a lack of diligence on the part of the state, that causes the delay in the prosecution. Thus, an accused who purposefully avoids prosecution cannot complain of prejudice resulting from the failure of the state to promptly commence the prosecution or from the unavailability of evidence as a result of the passage of time. Just as the statute of limitations creates an incentive for the prompt investigation of suspected criminal activity, tolling of the limitations period during any time when the accused purposely avoids prosecution reduces the incentive for the accused to abscond from justice.

{¶ 27} Federal caselaw construing Section 3290, Title 18, U.S.Code, the federal tolling statute, provides further support for our interpretation of R.C. 2901.13(G). We recognize that Section 3290, which provides that "[n]o statute of limitations shall extend to any person fleeing from justice," is phrased differently from R.C. 2901.13(G). However, federal courts hold that Section 3290 tolls the federal statute of limitations when "the defendant concealed himself with the *intent to avoid prosecution.*" (Emphasis added.) *United States v. Greever* (C.A.6, 1998), 134 F.3d 777, 780; see also *Streep v. United States* (1895), 160 U.S. 128, 133, 16 S.Ct. 244, 40 L.Ed. 365 ("In order to constitute a fleeing from justice, * *

\* [i]t is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun"). Thus, because Section 3290 is substantively equivalent to R.C. 2901.13(G), federal caselaw analyzing Section 3290 provides persuasive authority in construing R.C. 2901.13(G).

**{¶ 28}** Federal appellate courts have held that Section 3290 tolls the statute of limitations for all federal crimes during the time of a person's flight from justice, even if the person intended to avoid prosecution only on *unrelated* state or federal crimes. The Tenth Circuit Court of Appeals has explained that "the fact that appellee was fleeing prosecution from unrelated state crimes offers him no assistance in his attempt to take advantage of the federal statute of limitations. Appellee was fleeing justice – be it state or federal – and thereby triggered the tolling provision of § 3290; he cannot now have the privilege of the federal statute of limitations." *United States v. Morgan* (C.A.10, 1991), 922 F.2d 1495, 1499. See also *United States v. Hoffman* (C.A.6, 1997), 124 F.3d 200 (Table), 1997 WL 476513 (holding that the accused's flight to avoid prosecution on state child-abuse charges in California tolled the statute of limitations for a federal tax offense); *United States v. Rivera-Ventura* (C.A.2, 1995), 72 F.3d 277, 283 ("when a defendant has been indicted by a federal grand jury in one district and is unaware of that indictment, his flight to avoid prosecution in a different federal district under an unrelated federal indictment of which he is aware tolls the running of the statute on the charges of which he is unaware").

**{¶ 29}** Federal courts thus do not require a specific intent to avoid a particular prosecution for Section 3290 to toll the statute of limitations. Rather, as the Seventh Circuit Court of Appeals stated in *United States v. Marshall* (C.A.7, 1988), 856 F.2d 896, 900, "[t]he tolling statute reflects the congressional belief that where the defendant impedes the discovery and prosecution of his criminal conduct by 'fleeing from justice,' his right to avoid prosecution for distant

offenses is diminished while the government's need for additional discovery time is strengthened."

{¶ 30} For these reasons, we hold that R.C. 2901.13(G) tolls the statute of limitations for *all* offenses committed by an accused during the time when the accused purposely avoids prosecution for any offense.

**Conclusion**

{¶ 31} The legislature has mandated that the period of limitations *shall not run* during any time when the accused purposely avoids prosecution. The word "prosecution" means the process of bringing those who commit crimes to justice, and in the context of the statute, that definition is not limited to the crimes of which the authorities are aware or for which the accused has been indicted. In this case, if Bess committed the alleged crimes against Theresa's son, then he knew that when he fled, but his motivations in fleeing the jurisdiction are known only to him. The General Assembly, however, did not intend to require the state to prove the accused's specific intent in absconding, nor did it intend to toll the statute of limitations as to crimes known to the state but not toll it as to crimes unknown to the state. If we interpreted the statute otherwise, an accused would benefit from absconding from prosecution of crimes unknown to the state. This would be an illogical interpretation of the statute.

{¶ 32} Thus, R.C. 2901.13(G) tolls the statute of limitations for *all* offenses committed by an accused during the time when the accused purposely avoids prosecution for any offense, regardless of whether an indictment has been returned or whether underlying criminal activity has been discovered. Because the court of appeals concluded that the statute of limitations had expired in this case notwithstanding Bess's conduct in avoiding prosecution, that judgment is reversed and the cause is remanded to the trial court for further proceedings.

Judgment accordingly.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

10

PFEIFER and LANZINGER, JJ., dissent.

BROWN, C.J., not participating.

_____

**LANZINGER, J., dissenting.**

{¶ 33} I dissent because the majority's broad interpretation of R.C. 2901.13(G) violates the rule of lenity set forth in R.C. 2901.04(A): "Except as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

{¶ 34} The majority opinion frankly admits: "As Bess argues, the word 'prosecution' *could* refer to a particular prosecution, that is, '[a] criminal proceeding in which an accused person is tried.' Black's Law Dictionary (8th Ed.2004) 1258. *If 'prosecution' is defined this way, tolling occurs only when a person avoids prosecution for specific charges."* (Emphasis added.) Majority opinion at ¶ 19. Yet in spite of the fact that this is a reasonable construction of the statute, the majority continues by adopting the more favorable position for the state—that is, the general fugitive-from-justice interpretation that applies to a federal statute, Section 1073, Title 18, U.S.Code.

{¶ 35} In enacting Section 1073, Title 18, U.S.Code, Congress elected to provide a number of different instances in which an alleged offender is deemed to be a fugitive from justice and may be prosecuted for fleeing. The language used in the federal statute suggests that Congress wanted the statute to be interpreted broadly, which it since has been. See *United States v. Frank* (C.A.3, 1988), 864 F.2d 992, 1007.

{¶ 36} But R.C. 2901.13(G) tolls the statute of limitations when "the accused purposely avoids prosecution." The word "accused" implies that the person already has been implicated in a crime by someone. The mental state of "purposely" is defined in R.C. 2901.22(A): "A person acts purposely when it is

his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." The statute of limitations also explains when a "prosecution" begins: "A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same. A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same." R.C. 2901.13(E). The tolling of the statute of limitations therefore begins when an alleged offender purposely flees the jurisdiction to avoid a particular indictment or information.

{¶ 37} The language chosen by the General Assembly comports with the position advanced by the defense: tolling occurs when a person avoids prosecution for specific charges. Although a case may be, and has been, made for the state's alternative theory, I cannot subscribe to the idea that the limitations period is tolled for all crimes that an accused may have committed before the period that an accused avoids prosecution for a specific charge.

{¶ 38} Bess was convicted of three counts of rape and two counts of gross sexual imposition as a result of his stepdaughter's accusations that were made in 1989. *State v. Bess*, 8th Dist. No. 91560, 2009-Ohio-2032. He purposely avoided that prosecution. When Bess left, there was no thought of an investigation into possible crimes against his stepson. The stepson had been interviewed and had denied even the possibility that his sister's accusations were true.

{¶ 39} Interpreting R.C. 2901.13(G) as suggested would not mean that an indictment or information would need to be filed against an accused before the

statute of limitations would be tolled. The accused would need only know that an investigation is taking place or is likely to take place and that by leaving the jurisdiction, he or she is avoiding prosecution for that specific crime.

{¶ 40} Bess's absence from Ohio never prevented or interfered with an investigation from proceeding on this matter, for there had been no accusation relating to crimes against his stepson. Bess could not have purposely avoided prosecution for alleged crimes that were unknown to authorities.

{¶ 41} A prosecution against a person based on evidence that is obtained almost 20 years after the alleged crime was committed is exactly the kind of prosecution the statute of limitations is designed to bar. *Toussie v. United States* (1970), 397 U.S. 112, 114-115, 90 S.Ct. 858, 25 L.Ed.2d 156 (a statute of limitations "protect[s] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time").

{¶ 42} R.C. 2901.13(G) cannot toll the statute of limitations for a prosecution that has not yet been commenced against an accused. I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and T. Allan Regas, Assistant Prosecuting Attorney, for appellant.

David L. Doughten, for appellee.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, and Brandon J. Lester, Deputy Solicitor, urging reversal for amicus curiae Ohio Attorney General.

Timothy Young, Ohio Public Defender, and Jeremy J. Masters, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.

_____