EILEEN T. GALLAGHER, J.:
{¶ 1} On September 22, 2017, this court granted defendant-appellant, Asa Asadi-Ousley's, timely application to reopen his appeal pursuant to App.R. 26(B). State v. Asadi-Ousley , 8th Dist. Cuyahoga No. 104267, 2017-Ohio-7880, 2017 WL 4325823. Asadi-Ousley now brings the following supplemental assignment of error for review:
1. Appellant was prejudiced by the failure of appellate counsel to assign as error that trial counsel was ineffective in failing to file a motion to dismiss Count 5, felonious assault, when the six-year statute of limitations period had expired prior to the filing of the indictment.
{¶ 2} After careful review of the record and relevant case law, we vacate Asadi-Ousley's felonious assault conviction and reverse and remand for proceedings consistent with this opinion.
I. Procedural and Factual History
{¶ 3} In July 2015, Asadi-Ousley was charged in a seven-count indictment. Counts 1 and 2 charged him with rape, and each count carried a sexually violent predator specification. Counts 3 and 4 charged him with aggravated robbery. Count 5 charged him with felonious assault, and Counts 6 and 7 charged him with kidnapping.
{¶ 4} The matter proceeded to a jury trial, where the following evidence was adduced. Sometime around October 2008, T.M. moved from Huron, Ohio, to Cleveland to live with her boyfriend and his father. They lived in a duplex near the intersection of East 140th Street and Kinsman in Cleveland. T.M. had never lived in Cleveland and was unfamiliar with the neighborhood. On December 31, 2008, T.M. decided to spend New Year's Eve with some friends she recently made. T.M. testified that she had consumed two alcoholic drinks and smoked some marijuana with her friends. Around 10:30 p.m., one of her friends drove her home so she could watch the New Year's festivities on television with her boyfriend. When she arrived home, however, her boyfriend and his father were not home. The apartment did not have a phone so T.M. could not call anyone. Since no one was home, T.M. decided to walk to the corner store to buy some beer to drink while she watched the ball drop in Times Square on television. T.M. walked to the store around 10:45 p.m. and bought a can of beer. As she was walking back home, a man grabbed her from behind and held a knife against her neck. He told her not to scream or he would kill her. T.M. testified that she believed she heard two voices. The attacker covered her mouth with his hand. T.M. testified that she never observed her attacker's face because he approached her from behind. With the knife held to her *522 neck, the attacker pushed T.M., forcing her into an alleyway. The attacker then struck T.M. in the back of her head, and she lost consciousness. T.M. referred to the alley as "the cut." She described it as an area between a house and a building.
{¶ 5} T.M. awoke to find herself on the ground in the alley, her lip and nose were bleeding, her vagina was sore, and her head hurt. Her shirt was ripped open and her pants and underwear were pulled down. She testified that she realized that she had been raped. Her can of beer and three dollars in change were gone. T.M. walked out of the alleyway and headed back home. She called her boyfriend from a payphone on her way back, but her attempt to reach him was unsuccessful. A boy she recognized from the neighborhood saw her walking and helped her make it back home. When T.M. arrived home, the house was still empty. She laid in bed and cried. T.M. testified that she had suffered from depression when she was a teenager. She stayed in bed until the morning of January 3, 2009, when she went to her neighbor's house and called her boyfriend and her mother, J.H. She told them what had happened. T.M.'s mother and boyfriend both advised her to go to the hospital. J.H. testified that she remembered getting the phone call from T.M. She still remembers that phone call because of how distraught T.M. sounded. T.M. was scared and crying hysterically.
{¶ 6} T.M. then called an ambulance and was transported to the hospital. She brought the clothes she wore on the night of the attack with her to the hospital. T.M. spoke with police officers at the hospital, and a nurse performed a sexual assault kit on T.M.
{¶ 7} Sexual Assault Nurse Examiner Deanna Johnson ("Nurse Johnson") performed T.M.'s examination. Nurse Johnson testified that T.M. had vaginal pain and bleeding and was crying during the examination. Nurse Johnson further testified that T.M. disclosed she had been raped vaginally by strangers, one of whom had a knife, and had been struck in the head and lost consciousness. Nurse Johnson observed a scratch on T.M.'s neck consistent with T.M.'s report of having a knife held to her neck. Nurse Johnson collected samples for the sexual assault kit and collected T.M.'s clothing.
{¶ 8} Cleveland Police Officer Jenae Treece ("Officer Treece") responded to the report of T.M.'s rape and spoke to T.M. at the hospital. T.M. told her that one or possibly two suspects were involved in the attack, one of which had a knife. Officer Treece testified that T.M. had a scratch on her neck consistent with a knife being held there. No suspect was identified during her investigation. Officer Treece described the area where T.M. was attacked as being between East 139th Street and East 140th Street, behind a beauty supply store.
{¶ 9} T.M. moved to West Virginia after the incident. Almost seven years later, sometime in 2015, Cleveland police contacted T.M. The officers had her look at some photographs to identify her attacker, but she was unable to do so because she never saw his face. T.M. could not identify Asadi-Ousley at trial as her attacker.
{¶ 10} Jade McDaniel, a forensic scientist employed with the Ohio Bureau of Criminal Investigation ("BCI") testified that T.M.'s sexual assault kit was delivered to the BCI lab on March 19, 2014, for DNA testing. She performed the DNA testing in this case. The vaginal samples revealed a mixture of DNA profiles consisting of T.M. and an unknown male. A sample from T.M.'s underwear had a mixture of DNA profiles consistent with T.M.'s and an unknown male.
*523 {¶ 11} On March 6, 2015, the lab received a DNA sample from Asadi-Ousley. McDaniel compared Asadi-Ousley's DNA sample with the samples in the kit. McDaniel testified that Asadi-Ousley's DNA was found in T.M.'s vaginal samples and on T.M.'s underwear.
{¶ 12} At the conclusion of trial, the jury found Asadi-Ousley guilty of both rape counts, felonious assault, and both kidnapping counts. At sentencing, the trial court merged the rape counts into one count (Count 2) and merged the kidnapping counts into one count (Count 7). The trial court sentenced Asadi-Ousley to 15 years to life in prison on each of Counts 2 and 7 and eight years in prison on Count 5. The court ordered that the sentences be served concurrently for an aggregate of 15-years to life in prison.
{¶ 13} On May 4, 2017, this court entered a decision and journal entry affirming Asadi-Ousley's convictions, but found the trial court erred by failing to merge the offenses of kidnapping and rape. On May 12, 2017, the state filed an application for reconsideration. On May 16, 2017, Asadi-Ousley, pro se, filed an application to reopen the direct appeal pursuant to App.R. 26.
{¶ 14} On August 17, 2017, this court granted the state's application for reconsideration and substituted the previous decision with a new opinion and journal entry. Upon reconsideration, this court affirmed Asadi-Ousley's convictions and sentence. State v. Asadi-Ousley , 8th Dist. Cuyahoga, 2017-Ohio-7252, 102 N.E.3d 52.
{¶ 15} On September 22, 2017, this court further granted Asadi-Ousley's application to reopen the direct appeal, stating:
The appeal shall be limited to the issue of whether Asadi-Ousley was prejudiced by the failure of appellate counsel to argue on appeal that trial counsel was deficient by not filing a motion to dismiss Count 5 of the indictment as based upon the expiration of the six-year statute of limitations.
{¶ 16} Asadi-Ousley now brings this limited appeal.
II. Law and Analysis
{¶ 17} In his sole supplemental assignment of error, Asadi-Ousley argues appellate counsel rendered ineffective assistance of counsel by failing to raise an ineffective assistance of counsel claim regarding trial counsel's failure to file a motion to dismiss the felonious assault offense based on the expiration of the statute of limitations period.
{¶ 18} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; State v. Bradley , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989) ; and State v. Reed , 74 Ohio St.3d 534, 660 N.E.2d 456 (1996).
{¶ 19} In Strickland , the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland at 689, 104 S.Ct. 2052.
*524 {¶ 20} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes , 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen , 77 Ohio St.3d 172, 672 N.E.2d 638 (1996).
{¶ 21} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice; but for the unreasonable error, there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.
{¶ 22} "Generally, statutes of limitations begin to run when the crime is complete." State v. Swartz , 88 Ohio St.3d 131, 133, 723 N.E.2d 1084 (2000), citing Toussie v. United States , 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). Therefore, unless charges are commenced against the accused prior to the expiration of the limitation period, the state is barred from prosecuting the accused. R.C. 2901.13(A)(1).
{¶ 23} Pursuant to R.C. 2901.13(A)(1)(a), a prosecution for felonious assault shall be barred unless it is commenced within six-years after the offense is committed. Under R.C. 2901.13(E) :
A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first.
{¶ 24} In this case, the felonious assault offense was committed on or about December 31, 2008. The applicable period of limitations therefore expired on December 31, 2014. Asadi-Ousley was indicted on July 29, 2015. On appeal, the state concedes that the charge of felonious assault was brought outside the six-year statute of limitations period. However, the state argues that Asadi-Ousley's ineffective assistance of counsel claim must be rejected on the basis of waiver. We disagree.
{¶ 25} We agree with the state that this court has routinely held that an ineffective assistance of counsel claim for the failure to raise a statute of limitations defense is waived by a valid guilty plea. State v. Ramos , 8th Dist. Cuyahoga No. 104550, 2017-Ohio-934, 2017 WL 1026288, ¶ 2 ; State v. Pluhar , 8th Dist. Cuyahoga No. 102012, 2016-Ohio-1465, 2016 WL 1385043, ¶ 8. However, no plea was entered in this case. Thus, the holdings of Ramos and Pluhar are not implicated.
{¶ 26} We further recognize that appellate review of a statute of limitations defense may be waived under certain circumstances. See State v. Bolton , 8th Dist. Cuyahoga No. 103628, 2017-Ohio-7062, 2017 WL 3311027, ¶ 12 (The failure to file *525 such a motion to dismiss prior to trial waives the statute of limitations defense.). However, the state has failed to direct this court to persuasive authority to suggest that the failure to raise a statute of limitations defense below also waives an appellant's ability to challenge trial counsel's deficient performance in an ineffective assistance of counsel claim on appeal.[1] See State v. Grant , 12th Dist. Butler No. CA2003-05-114, 2004-Ohio-2810, 2004 WL 1196184 (noting that the failure to file a motion to dismiss on statute of limitations grounds prior to trial waives the right to raise a statute of limitations assigned error on appeal, but reversing convictions upon finding that trial counsel was ineffective for failing to raise the statute of limitations as a defense.). Accordingly, we find no basis to conclude that appellate counsel was precluded from raising the instant ineffective assistance of counsel claim on grounds of waiver.
{¶ 27} Alternatively, the state argues that while the indictment was filed more than six-years after the date of the offense, the statute of limitations period for the felonious assault offense was tolled pursuant to 2901.13(H). The statute provides:
The period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid prosecution.
{¶ 28} The Supreme Court of Ohio, in State v. Bess , 126 Ohio St.3d 350, 2010-Ohio-3292, 933 N.E.2d 1076, explained the tolling provision as follows:
A statute of limitations " 'protect[s] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.' " State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. , 85 Ohio St.3d 582, 586, 709 N.E.2d 1192 (1999), quoting Toussie v. United States , 397 U.S. 112, 114-115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).
These statutory purposes are not furthered, however, when the accused purposely avoids prosecution, because it is the conduct of the accused, not a lack of diligence on the part of the state, that causes the delay in the prosecution. Thus, an accused who purposefully avoids prosecution cannot complain of prejudice resulting from the failure of the state to promptly commence the prosecution or from the unavailability of evidence as a result of the passage of time. Just as the statute of limitations creates an incentive for the prompt investigation of suspected criminal activity, tolling of the limitations period during any time when the accused purposely avoids prosecution reduces the incentive for the accused to abscond from justice.
Id. at ¶ 25-26.
{¶ 29} On appeal, the state contends that "while [Asadi-Ousley] did not conceal his identity by changing his name or the like, he did take affirmative steps to thwart physical identification," by grabbing the victim from behind and rendering *526 her unconscious by striking her over the head. Accordingly, the state suggests the statute of limitations period for the felonious assault offense was tolled pursuant to R.C. 2901.13(H).
{¶ 30} This case presents a question of statutory interpretation of R.C. 2901.13(H). In construing statutes, the "paramount concern is the legislative intent in enacting the statute." State ex rel. Steele v. Morrissey , 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. Furthermore, "[i]n determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage." State v. Buehler , 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, ¶ 29. Thus, "[w]e must give effect to the words of a statute and may not modify an unambiguous statute by deleting words used or inserting words not used." State v. Teamer , 82 Ohio St.3d 490, 491, 696 N.E.2d 1049 (1998).
{¶ 31} After careful consideration, we find the state's statutory interpretation of R.C. 2901.13(H) to be overly broad. As stated, the statute of limitations period does not begin to run until the subject offense is completed. Viewing the plain language of the statute, it is evident that R.C. 2901.13(H) contemplates actions that would cause the statute of limitations period to "not run," or toll, during a certain period of time when the limitations period would otherwise be accruing but for the accused's conduct. Thus, it stands to reason that the tolling provision of R.C. 2901.13(H) applies to actions taken by the accused once the statute of limitations period has already begun to run - i.e. actions taken by the accused after the crime is completed. See Couch v. Warden , S.D. Ohio, No. 1:10-cv-22, 2011 WL 1043471 (Feb. 24, 2011) (noting that the First District Court of Appeals has held that the tolling provision of R.C. 2901.13(H) (former R.C. 2901.13(G) does not apply to factual scenarios where the defendant conceals his identity during the commission of the underlying offenses.) ); State v. Couch , 1st Dist Hamilton No. C-070001 (June 25, 2008) (unreported). To toll the statute of limitation period for an indefinite period of time in cases where the defendant takes steps to hide his or her identity during the commission of the offense would render subsection R.C. 2901.13(A) meaningless is such scenarios.
{¶ 32} In this case, the felonious assault, kidnapping, and rape of the victim were quickly reported and subsequently investigated by the police. Following the commission of the heinous crimes, there is no evidence in this record to suggest Asadi-Ousley attempted to abscond, change his identity, or otherwise purposely avoid prosecution. Unlike in Bess , 126 Ohio St.3d 350, 2010-Ohio-3292, 933 N.E.2d 1076, there is no evidence that Asadi-Ousley ever left the jurisdiction or indicated in any way that he was avoiding prosecution for his crimes. Accordingly, we are unable to conclude that the statute of limitations period was tolled under R.C. 2901.13(H).
{¶ 33} Finally, we find no merit to the state's suggestion that Asadi-Ousley was not prejudiced by the felonious assault conviction where the prison sentence imposed on the offense was ordered to run concurrently with the rape and kidnapping sentences. The Ohio Supreme Court has explained that even when a trial court imposes concurrent sentences, "a defendant is prejudiced by having more convictions than are authorized by law." State v. Underwood , 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31. Applying the foregoing to the circumstances of this case, the fact that Asadi-Ousley received concurrent sentences did not eliminate the prejudice he suffered by having a felonious assault *527 conviction on his record that is statutorily barred.
{¶ 34} Based on the foregoing, we find Asadi-Ousley was denied the effective assistance of appellate counsel when counsel failed to argue on appeal that trial counsel was deficient by not filing a motion to dismiss Count 5 of the indictment as based upon the expiration of a six-year statute of limitations. Under the totality of the circumstances presented in this case, we find there is a reasonable possibility that, had trial counsel moved to dismiss the felonious assault charge, the charge against Asadi-Ousley would have been dismissed for violating the statute of limitations period under R.C. 2901.13. Thus, appellate counsel's failure to raise an ineffective assistance of counsel claim was professionally unreasonable.
{¶ 35} We further find Asadi-Ousley was prejudiced by appellate counsel's performance. Had this issue been raised, there is a reasonable probability that the outcome of Asadi-Ousley's direct appeal would have been different as to his felonious assault conviction. As stated, a defendant establishes prejudice where, as here, he or she has more convictions than authorized by law. In this case, Asadi-Ousley's felonious assault conviction was not authorized by law because the prosecution commenced after the expiration of the statute of limitations period.
{¶ 36} Asadi-Ousley's sole assignment of error is sustained.
{¶ 37} Judgment reversed and remanded for the trial court to vacate the felonious assault conviction. Asadi-Ousley's remaining convictions are not impaired by this decision.
LARRY A. JONES, SR., J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS WITH SEPARATE OPINION

The state also relies on State v. Amin , 156 Ohio App.3d 304, 2004-Ohio-886, 805 N.E.2d 556, ¶ 8 (6th Dist). In Amin , the court reviewed defense counsel's failure to raise a statute of limitations argument at the trial court level for plain error. Ultimately, the Sixth District found no error, plain or otherwise, because the applicable statute of limitations period had not run. We find Amin to be inapplicable to our review of the ineffective assistance of counsel claims presently before this court.