[Cite as *State v. Khoshknabi*, 2018-Ohio-1752.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106117**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MOHAMMAD KHOSHKNABI**

DEFENDANT-APPELLANT

**JUDGMENT:**
VACATED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-611508-A

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 3, 2018

**ATTORNEYS FOR APPELLANT**

Jonathan A. Bartell
Margaret W. Wong
Scott E. Bratton
Margaret Wong & Associates
3150 Chester Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:     Gregory J. Ochocki
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Mohammad Khoshknabi ("appellant"), brings this appeal challenging his convictions for passing bad checks and theft. Specifically, appellant argues that the trial court erred by denying his motion to withdraw his guilty plea. After a thorough review of the record and law, this court reverses the trial court's judgment, vacates appellant's guilty plea, and remands the matter for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶2} Appellant was born in Iran. He entered the United States in 1983 with a student visa. He obtained permanent residence status in 1990. Appellant has been married to a United States citizen for more than ten years.

## A. Prior Criminal History and Removal Proceedings

{¶3} Appellant was charged in 1994 with three counts of passing bad checks in Franklin County Municipal Court.[1] Appellant pled no contest to one count of passing bad checks, a first-degree misdemeanor. In February 1997, appellant pled guilty to three third-degree misdemeanor counts of sexual imposition in the Cuyahoga County Court of Common Pleas. *State v. Khoshknabi*, Cuyahoga C.P. No. CR-96-343821-ZA.

{¶4} The federal government commenced removal proceedings against appellant in 2005. Thereafter, in March 2006, appellant filed a motion to withdraw his no-contest plea and vacate his conviction for passing bad checks in Franklin County, alleging that the trial court failed to provide him with the R.C. 2943.031 advisement regarding the immigration consequences associated with his plea. Appellant's motion to withdraw and vacate his conviction was granted, and the case was subsequently dismissed in April 2006. In February 2007, the removal proceedings were terminated.

## B. Cuyahoga C.P. No. CR-16-611508-A

{¶5} The instant criminal proceedings arose from a dispute between appellant and a roofing contractor over payment for work that the contractor performed on a building that appellant purchased in Cleveland Heights, Ohio. On November 16, 2016, the Cuyahoga County Grand Jury returned a two-count indictment charging appellant with passing bad checks, a fifth-degree felony in violation of R.C. 2913.11(B), and theft, a fifth-degree felony in violation of R.C. 2913.02(A)(3). Count 1 alleged that appellant issued the check for the payment of $1,000 or more but less than $7,500. Count 2 alleged that the property or services stolen was valued at

---

[1] *Columbus v. Khoshknabi*, Franklin M.C. No. 1994 CRB 007384.

$1,000 or more and less than $7,500. Appellant was arraigned on December 2, 2016. He pled not guilty to the indictment.

{¶6} The parties reached a plea agreement. The state amended the dollar amount for which the check was issued and the value of the property or services stolen to less than $1,000, reducing the charges from fifth-degree felonies to first-degree misdemeanors. On March 8, 2017, appellant pled guilty to the amended passing bad checks and theft charges. The trial court proceeded immediately to sentencing. The trial court sentenced appellant to community control sanctions for a term of one year on each count.

{¶7} As a result of appellant's 2017 convictions for passing bad checks and theft, and his 1997 convictions for sexual imposition, the federal government commenced removal proceedings against appellant. On June 6, 2017, appellant was detained by the Department of Homeland Security ("DHS"). Appellant is still in the custody of DHS.

{¶8} On June 22, 2017, appellant filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Therein, appellant argued that he was denied effective assistance of counsel before he entered his guilty plea. Appellant submitted an affidavit in support of his motion to withdraw in which he averred, in relevant part,

5. My lawyer knew that my immigration status was a serious issue for me. I needed assurance that any plea would not have any impact on my immigration case.

6. My lawyer told me on no less than three occasions that if I entered guilty pleas to the two misdemeanors (passing bad checks and theft), that I would not have any immigration issues. He said because they were misdemeanors, I would not get deported.

7. I relied on this advice and decided to enter guilty pleas to the two misdemeanors. I only entered the guilty pleas based on my lawyer's advice. I was strongly considering fighting my case but decided to proceed with guilty pleas based on his advice.

8. At the plea hearing, I did hear the judge mention that my plea may result in deportation. I did not believe that this applied to me because my attorney specifically told me that I would not face deportation under this plea agreement because I was pleading guilty to two misdemeanors.

* * *

12. I would not have entered a plea had my attorney told me that this plea would result in me being placed in deportation proceedings. I am now facing deportation. I had a case to defend, but chose to enter the plea solely upon the advice of my lawyer.

{¶9} The state opposed appellant's motion to withdraw on July 12, 2017. Appellant filed a supplemental motion to withdraw his guilty plea on July 17, 2017. Therein, he requested relief pursuant to R.C. 2953.21.

{¶10} The trial court held a hearing on appellant's motion to withdraw on July 26, 2017. Appellant's counsel and appellant testified during the hearing.

{¶11} Appellant's counsel testified that he practices criminal law and does not consider himself to be an immigration lawyer. When an immigration-related issue arises during the course of his representation of a client, he generally consults an immigration attorney.

{¶12} During his representation of appellant, appellant maintained that he was not guilty of the passing bad checks and theft charges. Appellant asserted that he had a defense to the charges in that he paid the victim in cash. Counsel explained that he knew appellant was not a United States citizen; however, he did not know that removal proceedings had been commenced against appellant in 2005 until after appellant was detained by DHS in June 2017.

{¶13} Appellant's counsel testified that he was aware that if appellant was convicted of two crimes involving moral turpitude, including misdemeanors, he would be removable from the

United States. Counsel acknowledged that he was aware that passing bad checks, theft, and sexual imposition were crimes involving moral turpitude. Counsel stated that he believed that if appellant pled guilty to passing bad checks and theft, these convictions would be counted as one crime involving moral turpitude for deportation purposes. He asserted that he did not believe appellant's previous sexual imposition convictions would be counted as a second crime involving moral turpitude for deportation purposes because appellant had not been "touched" for his prior offenses. Counsel testified that he did not believe the misdemeanor convictions for passing bad checks and theft would raise any immigration concerns.

{¶14} Counsel confirmed that appellant did ask for his opinion as to whether he would be removed from the United States as a result of pleading guilty. Counsel asserted that he advised appellant that he did not think appellant would be sentenced to jail and that he did not think it was likely that appellant would be deported because the passing bad checks and theft offenses to which he would be pleading guilty were misdemeanors. Counsel explained, however, that he never gave appellant a "guarantee" that he would not be deported.

{¶15} Counsel opined that at the time appellant entered the plea, he was relying on his advice that he did not believe appellant would be deported as a result of the plea. Counsel felt that he gave appellant bad advice on the issue of deportation. (Tr. 56.) He explained that had be been aware of the 2005 removal proceedings, he "probably might have called [an immigration attorney], because my feeling was well, they hadn't touched [appellant] up to this point, and [the passing bad checks and theft charges] were misdemeanors." (Tr. 52.) Furthermore, he asserted that had he been aware of the 2005 removal proceedings, he "would have probably changed [his] whole tactic." (Tr. 57.) Counsel acknowledged that he should have looked into the immigration issue more and that he was ineffective with regard to the issue of immigration

and for not following up on the Franklin County Municipal Court case involving passing bad checks, which, in part, resulted in the commencement of removal proceedings against appellant in 2005. Counsel confirmed that during all times throughout the course of the representation, appellant's position was that he was not guilty of passing bad checks and theft offenses.

{¶16} On cross-examination, counsel testified that appellant never told him about the 2005 removal proceedings. Counsel explained that he believed appellant would not be "bothered" for the misdemeanor passing bad checks and theft offenses because he had not been "bothered" for his prior sexual imposition convictions.

{¶17} Counsel testified that appellant wanted to fight the charges at trial; however, he advised against proceeding to trial because the second check that appellant gave to the contractor was "not good," and appellant did not have any receipt or proof of payment confirming that he paid the contractor in cash. Counsel asserted that appellant was concerned about his immigration status, but appellant did not say that he did not want to enter a plea agreement. Counsel explained that the driving force behind his representation of appellant was keeping him out of jail, rather than immigration and/or deportation.

{¶18} Regarding appellant's assertion in his affidavit that counsel told him on no less than three occasions that he would not be deported if he pled guilty, counsel testified that appellant's assertion was not accurate. He stated that he was not sure how many times he discussed immigration and/or deportation with appellant. Furthermore, he asserted that he would not guarantee anything to appellant in terms of sentencing or a plea. Counsel explained that although he would not guarantee anything to appellant regarding deportation, he would have advised appellant that he did not believe appellant would be deported as a result of pleading guilty.

**{¶19}** Appellant testified that he wanted to go to trial because he had evidence that he paid the contractor for the work performed. Appellant confirmed that counsel did not guarantee him anything regarding immigration or deportation. Nevertheless, appellant asserted that counsel told him with "high confidency" or a "degree in confidency" that he will not have any immigration issues if he pled guilty to the passing bad checks and theft offenses. (Tr. 72.)

**{¶20}** Appellant testified that he would absolutely not have pled guilty had he known that the guilty plea would have caused him to be removable from the United States, subject to mandatory detention, and placed in removal proceedings. Appellant acknowledged that removal proceedings had been commenced against him in 2005. He explained that the prior removal proceedings were terminated when his Franklin County conviction for passing bad checks was vacated. Despite his prior experience with removal proceedings, appellant asserted that he did not think his 2017 guilty plea would result in removal proceedings based on his lawyer's advice that he relied upon. Appellant acknowledged that he did not ask any questions during the change of plea hearing regarding immigration or deportation. He explained that he did not raise the issue or ask any question because his attorney told him that the plea was the best course of action for not having any immigration issues.

**{¶21}** Although he asserted in his affidavit that counsel told him that he would not be deported as a result of pleading guilty, appellant explained that counsel told him that it was "extremely unlikely" that the guilty plea would affect his immigration status. Based on the advice he received from counsel, appellant's understanding was that he would not be deported if he pled guilty.

**{¶22}** During closing arguments, the state argued that the driving force behind counsel's representation was appellant proving that he was not guilty of the passing bad checks and theft

offenses, rather than the issue of immigration.   The state argued that *Lee v. United States*, 582 U.S. ___, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017), is distinguishable from the present case because appellant's counsel did not "flat out say [appellant] will not be deported if [he] plead guilty to these misdemeanors," and appellant did not ask the trial court or his counsel any questions regarding the immigration issue during the change of plea hearing.   (Tr. 108.)   The state argued that appellant was not prejudiced by counsel's advice regarding deportation because (1) he knew that there could be immigration consequences associated with his guilty plea based on the fact that he faced removal proceedings in 2005 after pleading no contest to passing bad checks in Franklin County and (2) appellant did not have any questions about immigration after the trial court provided the R.C. 2943.031(A) advisement to him during the change of plea hearing.

{¶23} During defense counsel's closing argument, counsel argued that the trial court's R.C. 2943.031(A) advisement did not cure the defective advice regarding deportation that counsel provided to appellant.   At the close of the hearing, the trial court took the matter under advisement.

{¶24} On August 3, 2017, the trial court denied appellant's motion to withdraw his guilty plea.   The trial court concluded that (1) appellant's concern at the time he entered the plea agreement focused on the amount of restitution owed to the victim and his reputation in the community rather than immigration and/or deportation consequences associated with the plea; (2) appellant's concern at the time of sentencing was his reputation in the community and the conditions of his probation rather than immigration and/or deportation; (3) at no point during either the plea or sentencing hearings did appellant express concern regarding immigration and/or deportation consequences associated with his plea; (4) *Lee* was distinguishable from the present

case because appellant's counsel did not assure appellant that he would not be deported as a result of pleading guilty nor did appellant make a statement or inquire about the effect that his plea would have on his immigration status; and (5) appellant faced removal proceedings on a prior occasion after pleading no contest to passing bad checks in Franklin County, and thus, he was well aware that his guilty plea in the present matter had immigration consequences. Accordingly, the trial court concluded that appellant failed to demonstrate a reasonable probability that he would not have entered the guilty plea had he known that it would result in mandatory deportation.

{¶25} It is from this judgment that appellant filed the instant appeal on August 14, 2017. He assigns one error for review:

> I. The trial court abused its discretion when it denied [appellant's] motion to withdraw his guilty pleas and vacate convictions where [appellant] showed that he was prejudiced by his attorney's incorrect statements regarding deportation.

## II. Law and Analysis

### A. Motion to Withdraw Guilty Plea

{¶26} In his sole assignment of error, appellant argues that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

{¶27} Crim.R. 32.1, governing motions to withdraw guilty pleas, provides that "[a] motion to withdraw a plea of guilty may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Thus, a defendant that seeks to withdraw his or her guilty plea after the imposition of sentence must demonstrate a "manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.

Manifest injustice is a "clear or openly unjust act," *State ex rel. Schneider v.*

*Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), that is "evidenced by 'an extraordinary and fundamental flaw in the plea proceeding,'" *State v. McElroy*, 8th Dist. Cuyahoga Nos. 104639, 104640 and 104641, 2017-Ohio-1049, ¶ 30, quoting *State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 8; *see also State v. Stovall*, 8th Dist. Cuyahoga No. 104787, 2017-Ohio-2661, ¶ 17 ("'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'"), quoting *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. The determination of whether the defendant has demonstrated manifest injustice is within the sound discretion of the trial court. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 42 (8th Dist.), citing *Smith* at paragraph two of the syllabus. We will not reverse a trial court's ruling on a postsentence motion to withdraw a guilty plea unless the court abused its discretion. *Id.* To constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*State v. Hodges*, 8th Dist. Cuyahoga No. 105789, 2017-Ohio-9025, ¶ 13.

{¶28} Ineffective assistance of counsel can, under certain circumstances, constitute a manifest injustice warranting withdrawal of a guilty plea. *See, e.g., State v. Montgomery*, 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4. In order to establish a claim of ineffective assistance of counsel, the defendant must show (1) his trial counsel's performance was deficient in some aspect of his representation, i.e., the performance fell below an objective standard of reasonable representation, and (2) this deficiency prejudiced his defense, i.e., there is a

reasonable probability that but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶29} A defendant that enters a guilty plea waives a claim of ineffective assistance of counsel except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *Vinson* at ¶ 30; *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11. A defendant who has entered a guilty plea can only prevail on a claim of ineffective assistance of counsel by demonstrating (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, that caused the defendant's guilty plea to be less than knowing, intelligent and voluntary and (2) that there is a reasonable probability that, but for counsel's deficient performance, the defendant would not have pled guilty to the offenses at issue and would have insisted on going to trial. *Williams* at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The defendant must convince the court that the decision to reject the plea "'would have been rational under the circumstances.'" *State v. Ayesta,* 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 14, quoting *Padilla v. Kentucky,* 559 U.S. 356, 372, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). Additionally, the defendant must demonstrate that he would have prevailed at trial. *State v. Preciado*, 8th Dist. Cuyahoga No. 101257, 2015-Ohio-19, ¶ 17; *State v. Huang*, 8th Dist. Cuyahoga No. 99945, 2014-Ohio-1511, ¶ 14.

{¶30} In this case, we initially note that because appellant is not a citizen of the United

States, the trial court was required to personally address appellant and advise him, on the record, of the possible deportation consequences associated with his guilty plea pursuant to R.C. 2943.031(A). Appellant concedes that the trial court complied with R.C. 2943.031(A) and provided him with the statutory advisement. During the change of plea hearing, the trial court advised appellant as follows:

> I want to advise you again that if you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty to may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
>
> Do you understand that?

(Tr. 10.) Appellant confirmed that he understood the trial court's advisement.

{¶31} The federal deportation statute of 8 U.S.C. 1227(a)(2)(A)(ii) provides that any alien who is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct, regardless of whether the alien is confined for the crimes and regardless of whether the convictions were in a single trial, is deportable. In *Ayesta*, this court acknowledged that the language of the deportation statute does not state that a conviction for an enumerated offense results in mandatory deportation. *Id*. at ¶ 7. However, this court explained, "[w]hile the word 'deportable,' in its most literal interpretation, means 'able to be deported,' as the United States Supreme Court has recognized, the practical result of such a conviction is that the alien almost always *will be deported*." (Emphasis sic.) *Id*., citing *Padilla* at 360-364.

> [A]lthough 8 U.S.C. 1227 does not use the phrase "mandatory deportation," "courts have been describing the level of certainty of deportation for deportable offenses as 'virtually automatic' and 'unavoidable,' *United States v. Couto*, 311

F.3d 179, 184 (2d Cir.2002), 'certain,' *INS v. St. Cyr*, 533 U.S. 289, 325, 121

S.Ct. 2271, 150 L.Ed.2d 247 (2001), and 'presumptively mandatory,' *Hernandez*

*v. State*, 124 So.3d 757, 763 (Fla.2012)."

*State v. Vialva*, 8th Dist. Cuyahoga No. 104199, 2017-Ohio-1279, ¶ 18*,* quoting *Ayesta* at ¶ 7.

Accordingly, appellant's convictions for passing bad checks and theft, in conjunction with his

1997 convictions for sexual imposition, would presumably subject him to mandatory deportation.

 *See Vialva* at *id.* "Despite this 'mandatory' deportation consequence, the General Assembly

has not required a court to advise a defendant of the exact deportation consequence." *Id.*, citing

R.C. 2943.031(A).

{¶32} In his motion to withdraw his guilty plea, appellant argued that his trial counsel

provided ineffective assistance of counsel pursuant to *Padilla*, 559 U.S. 356, 130 S.Ct. 1473, 176

L.Ed.2d 284. In *Padilla*, the United States Supreme Court held that a defendant's counsel has a

duty to advise the defendant of certain immigration-related collateral consequences of a guilty

plea — particularly the possibility of deportation. *Id.* at 374. In *Ayesta*, this court explained

counsel's duty in light of the *Padilla* holding:

> [t]rial counsel has a duty to accurately advise his [or her] client of the advantages
> and disadvantages of a plea agreement. *Padilla* at 370. This includes advising
> noncitizen defendants of the deportation consequences associated with a plea. *Id.*
>  Counsel breaches this duty by either providing affirmative misadvice about
> immigration consequences, or by not providing any advice at all when advice is
> warranted. *Id.* at 370-371 (stating, "there is no relevant difference between an act
> of commission and an act of omission in this context" (internal quotations
> omitted)). Thus, failing to advise a noncitizen defendant of potential deportation
> consequences associated with a plea satisfies the first prong of the *Strickland* test
> by establishing that counsel's performance fell below an objective standard of
> reasonableness. *See* [*Padilla*] at 373-374.

*Ayesta,* 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, at ¶ 15.

{¶33} In support of his motion to withdraw, appellant argued that his trial counsel

provided ineffective assistance with respect to the issue of deportation. Regarding the first *Strickland* prong, appellant alleged that counsel's performance was deficient because (1) counsel mistakenly believed that appellant could avoid deportation by pleading guilty to the amended passing bad checks and theft counts, (2) counsel advised appellant that he could avoid deportation by pleading guilty, and (3) counsel failed to adequately investigate the deportation issue and appellant's immigration history. In other words, appellant alleged that trial counsel provided affirmative misadvice, rather than failing to give advice or giving incomplete advice, about the immigration consequences of the plea agreement. Appellant emphasizes that counsel acknowledged that his performance was deficient during the hearing on the motion to withdraw.

{¶34} As noted above, appellant's counsel testified that (1) he knew that multiple convictions for crimes involving moral turpitude would lead to deportation and (2) sexual imposition, theft, and passing bad checks were crimes involving moral turpitude. However, counsel explained that he advised appellant that he did not believe he would be deported as a result of pleading guilty because the offenses had been amended from fifth-degree felonies to first-degree misdemeanors.

{¶35} After reviewing the record, we find that appellant's counsel failed to properly advise appellant about the immigration consequences of his plea agreement. The deportation consequences of appellant's plea were clear — by pleading guilty to passing bad checks and theft, both crimes involving moral turpitude, and having previously been convicted of sexual imposition, also a crime involving moral turpitude, appellant was subjecting himself to mandatory deportation. Appellant's counsel, however, advised appellant that it was unlikely that he would face deportation if he pled guilty to the misdemeanor offenses. Because appellant's counsel failed to properly advise appellant about the deportation consequences of the

plea agreement, the first *Strickland* prong is satisfied. *See Ayesta,* 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, at ¶ 15, citing *Padilla*, 559 U.S. at 373-374, 130 S.Ct. 1473, 176 L.Ed.2d 284.

{¶36} Regarding the second *Strickland* prong, appellant asserted that he was prejudiced by counsel's deficient performance because he relied on counsel's erroneous advice and entered the guilty plea. He insists that but for counsel's erroneous advice, and had he known of the mandatory deportation consequences associated with the guilty plea, he would not have pled guilty.

{¶37} The state argues that appellant cannot demonstrate that he was prejudiced by counsel's performance. In support of its position, the state contends that (1) there is no contemporaneous evidence supporting appellant's assertion that he would not have pled guilty but for counsel's deficient performance; (2) appellant's primary concerns at the time he entered the plea were avoiding jail, restitution, and probation, not immigration; (3) the trial court complied with R.C. 2943.031(A) and advised appellant that there were potential immigration consequences associated with the plea; (4) appellant did not ask any questions regarding the trial court's R.C. 2943.031(A) advisement; and (5) based on his involvement in the 2005 removal proceedings, appellant was aware that his misdemeanor convictions could subject him to removal proceedings.

{¶38} The United States Supreme Court recently explained that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 582 U.S. ___, 137 S.Ct. at 1967, 198 L.E.2d 476. The court held that Lee adequately demonstrated a reasonable probability that he

would not have pled guilty had he known that it would lead to mandatory deportation. *Id.* The factors upon which the court reached this conclusion included (1) deportation was the "determinative issue" in Lee's decision to plead guilty, (2) both Lee and his counsel testified that Lee would have gone to trial if he had known about the deportation consequences associated with his plea, (3) Lee had strong connections to the United States and he did not have strong connections to another country, (4) it would not have been irrational for Lee to reject the plea agreement and proceed to trial, and (5) the consequences of taking a chance at trial were not markedly harsher than the consequences of pleading guilty. *Id.* at 1967-1969.

{¶39} In the instant matter, appellant insists that he wanted to contest the passing bad checks and theft charges at trial. Appellant testified in his affidavit and during the trial court's hearing on his motion to withdraw that he wanted to proceed to trial. Furthermore, appellant's counsel testified that appellant maintained that he was not guilty of the passing bad checks and theft charges, appellant wanted to fight the charges at trial, and appellant believed that he could defend against the charges on the basis that he paid the victim in cash.

{¶40} We cannot say that it would be irrational for a defendant in appellant's position to reject the plea agreement and take his chances at trial. Appellant, like *Lee*, had strong connections to the United States and to no other country. *See Lee* at 1968. If appellant's guilty plea automatically subjected him to deportation, it may be rational for him to reject the plea agreement and insist on going to trial. Appellant was born in Iran in 1964. He has lived in the United States for more than 30 years. Appellant has been married to a United States citizen for more than ten years and they have a child who is a United States citizen. Under these circumstances, appellant may decide to take his chances at trial rather than pleading guilty and subjecting himself to mandatory deportation. *See State v. Yahya*, 10th Dist. Franklin No.

**{¶41}** Regarding the "determinative issue" factor discussed in *Lee*, appellant averred in his affidavit that his counsel "knew that [his] immigration status was a serious issue for [him]. [He] needed assurance that any plea would not have any impact on [his] immigration case." Counsel, on the other hand, testified that the "driving force" behind his representation of appellant was avoiding a prison sentence rather than appellant's immigration status.

**{¶42}** The record reflects that appellant and counsel discussed the issue of immigration prior to the change of plea hearing. During the change of plea hearing, counsel explained that appellant was not a U.S. citizen; counsel asserted that he "had that checked out," and that "everything is copacetic from our end[.]" (Tr. 6.) Although counsel opined that immigration was not the "driving force" behind his representation of appellant, counsel's statements during the sentencing hearing — which was held on the same day as the change of plea hearing — indicate that the immigration issue was, in fact, a serious concern for appellant. During his statement in mitigation of sentencing, counsel stated,

> [Appellant] is 52. He's married. [His wife is] a medical research doctor at the
> Cleveland Clinic. * * * They live in South Euclid. [Appellant] immigrated from
> Iran. *He doesn't want to go back there*, so I thank you Madam prosecutor for the
> amendment to the misdemeanor. *That would be devastating*. He got away
> [from Iran] in '78 and in '83 was finally granted a student visa[.]

(Emphasis added.) (Tr. 17-18.) Accordingly, we find that deportation was a serious issue for appellant in plea discussions. Although appellant wanted to proceed to trial, appellant's counsel advised him that he could avoid deportation by pleading guilty to the amended misdemeanor offenses. Relying on counsel's advice, albeit it erroneous advice, appellant elected to enter the

guilty plea rather than proceeding to trial.

{¶43} Additionally, we find that the consequences of taking a chance at trial were not markedly harsher than pleading guilty. *See Lee*, 582 U.S. ___, 137 S.Ct. at 1969, 198 L.Ed.2d 476. Appellant was charged with two fifth-degree felonies. R.C. 2929.14(A)(5) provides that the maximum prison term for a felony of the fifth degree is one year. Pursuant to the plea agreement, the passing bad checks and theft offenses were amended to first-degree misdemeanors. R.C. 2929.24(A)(1) provides that the maximum jail term for a first-degree misdemeanor is six months.

{¶44} The timing of appellant's motion to withdraw his guilty plea supports his claim that he would not have pled guilty if he had been properly advised of the immigration consequences of his plea. "An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324, at paragraph three of the syllabus. In this case, appellant pled guilty on March 8, 2017. The federal government commenced removal proceedings against appellant in June 2017. Appellant filed his motion to withdraw his guilty plea on June 22, 2017, and his supplemental motion to withdraw on July 17, 2017. Thus, there was not an undue delay between the commencement of removal proceedings and the filing of appellant's motion to withdraw his plea. *See Yahya,* 10th Dist. Franklin No. 10AP-1190, 2011-Ohio-6090, at ¶ 21 (finding that the timing of appellant's motion to withdraw her guilty plea — filed less than six months after she pled guilty — may support her claim that she would not have pled guilty if she had been properly advised of the immigration consequences of the plea).

{¶45} Appellant acknowledges that he did not raise the immigration issue or ask any

questions during the change of plea hearing after the trial court gave the R.C. 2943.031(A) advisement. He asserts, however, that he relied on counsel's belief that he could avoid deportation by pleading guilty and he believed that counsel had taken care of the immigration issue. As such, he did not believe that there was any need to raise the issue or ask any questions.

{¶46} As noted above, appellant concedes that the trial court complied with R.C. 2943.031(A) and advised him that there *may* be immigration consequences associated with his plea. However, appellant argues that he relied on counsel's advisement that there was a good chance that he would not be deported if he pled guilty to the misdemeanor offenses over the trial court's general statutory advisement. Furthermore, appellant asserts that the trial court's statutory advisement neither precludes a finding of prejudice nor cures the erroneous advice that counsel provided to him.

> This court has previously adhered to the concept that "[a] trial court's R.C. 2943.031(A) advisement that the defendant may be deported as a result of his plea, is sufficient to overcome any prejudice caused by counsel's failure to properly advise the defendant." *State v. McCubbin*, 8th Dist. Cuyahoga No. 100944, 2014-Ohio-4216, ¶ 16, citing *State v. Lababidi*, 2012-Ohio-267, 969 N.E.2d 335 (8th Dist.); *State v. Velazquez*, 8th Dist. Cuyahoga No. 95978, 2011-Ohio-4818. This proposition of law was born from our decision in *State v. Bains*, 8th Dist. Cuyahoga No. 94330, 2010-Ohio-5143, where we upheld a trial court's decision denying a motion to withdraw because, among other things, the trial court properly advised the defendant under R.C. 2943.031(A) that he may be subject to deportation and other immigration consequences.

*State v. Yapp*, 2015-Ohio-1654, 32 N.E.3d 996, ¶ 14 (8th Dist.). In *Yapp*, this court clarified that "a trial court's R.C. 2943.031(A) advisement does not necessarily foreclose the possibility of finding prejudice under *Padilla*." *Id*. at ¶ 16. In *Ayesta*, this court concluded,

> to the extent that the *Bains* progeny of cases suggest that a trial court's advisement under R.C. 2943.031(A) "cures" any prejudice or that it precludes a finding of prejudice, we correct and clarify those cases and uphold the proposition of law

manifested in *Bains*, which is that a trial court's proper advisement under R.C. 2943.031(A) *may* preclude a finding of prejudice.

(Emphasis sic.)   *Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, at ¶ 20.

> [A] defendant is entitled to rely on advice from counsel and to trust that the advice is competent and accurate. *See, e.g., Abdalla v. Olexia* (1996), 113 Ohio App.3d 756, 759, 682 N.E.2d 18 ("A layman untrained in the law is entitled to and, in fact, to some extent required to rely upon advice of his legal counsel."); *State v. Benson* (July 18, 1997), 2d Dist. No. 09-CA-29, 1997 Ohio App. LEXIS 3410 ("A criminal defendant facing serious potential sanctions can be expected to rely upon the advice of his counsel.").   This is particularly true for an immigrant, who faces not only potential criminal sanctions but also deportation.

*Yahya* at ¶ 17.

{¶47} In the instant matter, the record reflects that appellant's counsel advised appellant, before the change of plea hearing, that it was unlikely that he would be deported if he pled guilty to the misdemeanor passing bad checks and theft offenses.   When the trial court subsequently provided the R.C. 2943.031(A) warning to appellant during the change of plea hearing, advising appellant that there may be immigration consequences associated with the plea, appellant reasonably relied on counsel's advice that he could avoid deportation by pleading guilty.   Under these circumstances, the trial court's delivery of the general statutory advisement did not cure his attorney's specific misadvice regarding the mandatory deportation consequences of the guilty plea.

{¶48} Accordingly, we find that appellant established that he was prejudiced by counsel's deficient performance and demonstrated a reasonable probability that (1) but for counsel's erroneous advice regarding deportation and (2) had he known that he was subject to mandatory deportation as a result of pleading guilty, he would not have entered the guilty plea and would have insisted on proceeding to trial.   As such, the second *Strickland* prong is satisfied.

{¶49} For all of the foregoing reasons.   Appellant's sole assignment of error is sustained.

### III. Conclusion

**{¶50}** After thoroughly reviewing the record, we find that the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea. Counsel's failure to properly advise appellant about the deportation consequences of his guilty plea constituted deficient performance. Appellant demonstrated a reasonable probability that but for counsel's erroneous advice, and had he known about the mandatory deportation consequences of the guilty plea, he would not have pled guilty and would have insisted on going to trial. Accordingly, appellant was prejudiced by counsel's erroneous advice.

**{¶51}** The trial court's judgment denying appellant's motion to withdraw is reversed. Appellant's guilty plea is vacated. This matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR